C. P. KIMBALL & CO., Appellant, *vs.* WILLIAM L. O'CON-
NELL, County Treasurer, Appellee.

*Opinion filed April 23, 1914.*

TAXES—*the board of assessors cannot change assessment after
completing the work and attaching affidavit to books.* Where the
board of assessors has completed the revision of its assessment of
the personal property of a manufacturing or mercantile corpora-
tion and has attached to the assessment books the affidavit required
by section 23 of the Revenue act of 1898 it has no further power
to change the assessment or alter the assessment books so as to
change or affect the taxes for that year, and .any subsequent as-
sessment by such board of the capital stock of the corporation is
without authority and is void.

APPEAL from the Circuit Court of Cook county; the
Hon. JESSE A. BALDWIN, Judge, presiding.

ELLIS & LEWIS, for appellant.

CARL R. CHINDBLOM, County Attorney, and WILLIAM
F. STRUCKMANN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant, C. P. Kimball & Co., filed a bill to restrain
the county treasurer of Cook county from collecting taxes
extended upon a capital stock assessment made by the board
of assessors of Cook county for the year 1912. The cause
was heard upon the bill, answer and replication and a stipu-
lation as to the facts. The decree dismissed the bill for
want of equity, and the complainant appealed.

Several questions have been presented by the argument
of .counsel, but since the board of assessors, in our opin-
ion, was without authority to make the assessment, that is
the only question we shall consider.

The appellant is an Illinois corporation organized for
purely.manufacturing and mercantile purposes, and its capi-
tal stock is subject to assessment by the board of assessors.

(*The Hub* v. *Hanberg,* 211 Ill. 43; *Consolidated Coal Co.*
v. *Miller,* 236 id. 149.) The stipulation states that between
April 1 and June 1, 1912, the board of assessors made an
assessment against the personal property of the appellant
and on July 1 returned the assessment made by them to the
board of review, having attached to such assessment the af-
fidavit required by section 23 of the act of 1898 for the as-
sessment of property. Afterward, on September 12, 1912,
the board of review, having reviewed the assessment, af-
fixed the affidavit required by section 38 of the act of 1898.
On October 2, 1912, the board of assessors made an as-
sessment against the capital stock of the appellant of $16,-
667 assessed value, which the board of review confirmed on
October 23 and delivered to the county clerk.

Section 23 above mentioned requires the board of as-
sessors to meet on the third Monday in June for the pur-
pose of revising the assessment of personal property and
to finish such revision on or before the first day of July.
When such revision is complete and the change and revi-
sion entered in the assessment books, it is provided that an
affidavit shall be appended to each of such assessment books
in the form required by law, signed by at least two of such
assessors, and upon the signing of such affidavit the board
of assessors shall have no further power to change the as-
sessment or alter the assessment books so as to change or
affect the taxes for that year. Section 38 provides that the
board of review shall, on or before September 7, annually,
complete its work, and make, or cause to be made, the en-
tries in the assessment books required to make the assess-
ment conform with the changes made therein by the board
of review, and shall attach to each of said books an affi-
davit signed by at least two members of such board, pro-
vided that in counties containing 125,000 inhabitants or
more the board of review shall also meet from time to time,
and whenever necessary, to consider and act upon com-

plaints and to further revise the assessment of real property as may be just and necessary. Section 40 provides that a failure to complete an assessment in the time required by law shall not vitiate such assessment, but the same shall be as legal and valid as if completed in the time required by law. Section 43 provides that when the books are completed the board of review shall deliver one set to the county clerk, one set to the board of assessors or supervisor of assessment, and the remaining set shall remain in the office of the board of review, and the assessment so completed by the board of review and certified to the county clerk and equalized as provided by law shall be the assessment upon which the taxes of that year shall be extended by the county clerk.

The construction to be placed upon these various sections was before this court in *Barkley* v. *Dale,* 213 Ill. 614, and on page 619 we said: "We think, from a consideration of all of said sections, that the provisions in section 38 that boards of review shall complete their work on or before the 7th day of September, annually, in view of section 40, is so far directory that the board may continue its sessions until it has completed the work then pending before it and is prepared to return the assessment books to the county clerk. It is clear, however, when a board of review has completed its work and attached the necessary affidavit to the assessment books and returned said books to the county clerk that the jurisdiction to act of said board of review for that year, except in counties of 125,000 or more inhabitants, which is covered by the proviso to section 38, has ceased, and that an assessment of omitted credits made by the board of review after the assessment books have been returned by the board to the county clerk is void."

In *Carney* v. *People,* 210 Ill. 434, this court had under consideration the proviso contained in the latter part of section 38, with reference to the board of review in counties

with over 125,000 inhabitants, and on page 441 we said: "The latter provision must necessarily be limited to the time that the board of review has control of the assessment books. When the books are completed and delivered to the county clerk, the assessment as completed and as equalized by the State Board of Equalization is the assessment upon which the taxes are to be extended and upon which the rate per cent of the taxes is to be computed. An original assessment may therefore be made by the board of review up to the moment the books are returned, and at a time that would deprive the person assessed of any hearing unless notice should be given him."

On July 1 the board of assessors, having completed the revision of their assessment and having appended to the assessment books the required affidavit signed by them, had no further power, by the express provisions of section 23, to change the assessment or alter the assessment books so as to change or affect the taxes of that year.

It is argued that under section 3 of the Revenue act the capital stock of a corporation is that, only, which is over and above the assessed value of the tangible property, and therefore a proper assessment of capital stock cannot be made until all assessments of tangible property have become fixed and beyond recall. When the Revenue act was first passed requiring the capital stock of all corporations to be assessed by the State Board of Equalization it was possible to ascertain the assessed value of all tangible property before the capital stock assessment was made, and this may still be done where assessments are made by the State Board of Equalization. The act has been amended, however, so that the capital stock of many corporations must be assessed by the local assessor, and the statute has expressly fixed a limit to the time within which the assessor has power to act. Where the corporation owns tangible property which is not assessed by the local assessor whose

duty it is to assess the capital stock, the law has made no provision for such assessor's ascertaining the assessed value and the assessor must use such means as are available for that purpose, but the difficulty of making the assessment will not extend his authority beyond the period fixed by law for its termination.

The assessment of appellant's capital stock was made by a body having no authority, at the time, to make it, and was void.

The decree will be reversed and the cause remanded to the circuit court, with directions to enter a decree granting the relief prayed for.

*Reversed and remanded, with directions.*