(No. 12484.—Writ awarded.)

THE PEOPLE *ex rel.* Philip Yarrow, Petitioner, *vs.* AU-
GUST LUEDERS *et al.* Respondents.

*Opinion filed February 20, 1919.*

1. MANDAMUS—*rules of common law pleading apply to a pro-
ceeding for mandamus.* A proceeding for a writ of *mandamus* is
an action at law and the pleadings are governed by the same rules
as apply to a common law action, and the petition, being in the
nature of a declaration, takes the place of the alternative writ
at common law.

2. SAME—*issue at law as to right of petitioner cannot be raised
by facts set up in answer.* An answer to the merits of a petition
for a writ of *mandamus* waives a demurrer, and an issue at law as
to the right of the petitioner for the relief prayed for on the facts
stated in the petition cannot be raised by setting up in an answer
facts designed to raise such an issue.

3. SAME—*answer must either deny or confess and avoid facts
alleged in petition.* A respondent to a petition for *mandamus* may
demur or answer, but if he answers the answer must traverse by
distinct and direct denial the facts alleged in the petition upon
which the claim of the relator is founded or by confession and
avoidance set up other facts sufficient in law to defeat the claim.

4. SAME—*facts not denied are admitted but if denied must be
proved.* Facts charged in a petition for a writ of *mandamus* and
denied by the respondent must be proved by the relator but if not
denied are admitted, and matters alleged in avoidance of the charge
made, if not denied by the relator, are admitted but if denied must
be proved by the respondent.

5. SAME—*pendency of another suit must be raised by a plea in
abatement—waiver.* The pendency of another suit for a writ of
*mandamus* for the same purpose must be raised by a plea in abate-
ment, and respondents who have answered the petition on the mer-
its waive such plea.

6. SAME—*Supreme Court may take jurisdiction although pro-
ceeding is pending in lower court.* In a proceeding for a writ of
*mandamus* the superior court of Cook county exercises general
jurisdiction, which·is not concurrent with the jurisdiction of the
Supreme Court; but the exercise of jurisdiction by the Supreme
Court in *mandamus* is discretionary, and it will assume jurisdic-
tion in cases where there is a special reason and the remedy in the
lower court is ineffective, although another proceeding is pending
in a lower court.

7. SAME—*election commissioners are bound by a petition for local option election proper upon its face.* Where a petition for an election under the Local Option law is filed in compliance with the statute and on its face is in due form and signed by the requisite number of registered legal voters, the election commissioners are bound by the petition and cannot enter into an investigation to determine whether the signers are, in fact, registered legal voters.

8. SAME—*election commissioners are not superior to city or village clerks.* In the matter of submitting the local option question to an election upon petition the board of election commissioners of the city of Chicago is not superior to city or village clerks and is not invested with any power or discretion not possessed by those officials with respect to investigating the *prima facie* showing of facts in the petition.

9. SAME—*the courts may enforce performance of a continuing duty at any time.* Where it appears that the process of the court cannot become effectual a writ of *mandamus* will not be granted, but there are duties which are continuing in their nature, and the courts can enforce their performance at any time.

10. SAME—*duty of election commissioners to submit propositions for local option election is a continuing one.* The duty of the board of election commissioners to submit the local option question is a continuing one, which the board cannot evade by entering upon an unauthorized investigation of the petition consuming so much time that the question cannot be presented at the next election after the filing of the petition, which asked for a submission of the question at the next election without naming any date, and the Supreme Court may require the commissioners to submit the question at a subsequent election.

DUNCAN, C. J., dissenting.

ORIGINAL petition for *mandamus.*

FRANK B. EBBERT, and CHARLES H. WATSON, (FRANK J. LOESCH, CHARLES S. CUTTING, DANIEL L. CRUICE, and ROBERT McMURDY, of counsel,) for petitioner.

COLIN C. H. FYFFE, for respondents.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

By leave of court a petition in the name of the People of the State of Illinois, upon the relation of Philip Yarrow, a citizen, resident and registered legal voter of the city of

Chicago and one of the signers of a petition for the submission to the voters of said city of the proposition "Shall this city become anti-saloon territory," was filed in this court praying for a writ of *mandamus* directed to the respondents, August Lueders, Bernard Horwich and Frank X. Rydzewski, the board of election commissioners of said city, commanding them to give notice, in the manner provided by law, of the submission of such question at the next election for officers in said city, to be held on Tuesday, April 1, 1919. The defendants answered the petition, and the cause has been submitted for decision on the petition and answer.

A proceeding for a writ of *mandamus* is an action at law, and the petition, answer and subsequent pleadings are governed by the same rules as apply to an ordinary action at law. (*Silver* v. *People*, 45 Ill. 224; *Dement* v. *Rokker*, 126 id. 174; *Board of Supervisors* v. *People*, 159 id. 242; *People* v. *Board of Education*, 236 id. 154.) The petition takes the place of the alternative writ at common law and is in the nature of a declaration. (*City of Chicago* v. *People*, 210 Ill. 84; *People* v. *Pavey*, 151 id. 101; *People* v. *Busse*, 247 id. 333.) An answer to the merits of a petition for a writ of *mandamus* waives a demurrer, and an issue at law as to the right of the petitioner for the relief prayed for on the facts stated in the petition cannot be raised by setting up in an answer. facts designed to raise such an issue. (*Chicago Great Western Railway Co.* v. *People*, 179 Ill. 441.) A respondent may demur or answer, and if he answers the answer must traverse by distinct and direct denial the facts alleged in the petition upon which the claim of the relator is founded, or by confession and avoidance set up other facts sufficient in law to defeat the claim. All the material facts alleged in the petition and not denied by the answer are admitted to be true. (*Chicago and Alton Railroad Co.* v. *Suffern*, 129 Ill. 274; *People* v. *Crabb*, 156 id. 155; *People* v. *Commissioners of Cook*

*County,* 180 id. 160.) Facts charged in the petition and denied by the respondent must be proved by the relator but if not denied are admitted, and matters alleged in avoidance of the charge made, if not denied by the relator, are admitted but if denied must be proved by the respondent. Although every fact alleged in the petition and not denied has been admitted as a matter of law, the answer of the respondents admits *seriatim* the material averments of fact in the petition but denies as a conclusion of law that the proceedings of the respondents upon the petition, and the denial thereof, were without lawful power and authority. The answer sets up the pendency of proceedings in the superior court of Cook county for a writ of *mandamus* based on the petition for the submission of the question whether the city should become anti-saloon territory.

Applying these settled rules of pleading we find the facts to be as follows: The total vote cast in the city of Chicago at the last regular election for choosing city officers, held on April 3, 1917, was 425,868. The statute required a petition containing the signatures of legal voters in number not less than one-fourth of the total vote cast at such preceding election, and on January 31, 1918, more than sixty days before the regular annual election for choosing city officers, to be held on April 2, 1918, there was filed in the office of the respondents, as the board of election commissioners of the city, a petition upon which there were the signatures of not less than 106,467 persons who signed the same as duly registered legal voters of the city and on the petition were all the particulars required by the statute, and they are detailed in the petition of relator. The petition contained 8663 sheets bound together, and by statute it was made *prima facie* evidence that the signatures, statements of residence and dates thereon were genuine and true and the persons signing the same were registered legal voters of the city of Chicago. The petition remained in the office of the respondents from the time of its presentation

on January 31, 1918, to March 5, 1918, without any action
by the respondents. In the meantime persons interested in
the manufacture of and traffic in intoxicating liquor were
allowed to separate the sheets and copy the same and make
photographic copies, and said persons put over one hun-
dred copyists and checkers at work copying and checking
the petition, who were continuously engaged in that work
for eight weeks. Cards were made of the signatures, and
objections were made to signatures noted on the cards to
the number of 54,148. On March 8, 1918, the respondents
ordered an examination of the petition under the supervi-
sion of their chief clerk, and the examination was made by
checking the cards and petition against the registration lists
in the possession of the respondents. The clerk reported
on March 19, 1918, that the number of names on the pe-
tition was 148,651, that 49,739 signatures should not be
counted, and that there were 7515 less valid signatures than
the number required by law. The respondents thereupon
refused to submit the question by placing it on the ballot,
and on the same day a petition in the name of the Peo-
ple, on the relation of Charles E. Coleman, was filed in
the superior court of Cook county for a writ of *mandamus*
compelling the respondents to place the proposition on the
ballot. The summons was returnable March 25, 1918, and
the respondents filed their answer on March 28, 1918, set-
ting up the investigation made by the board and the in-
sufficiency of the petition by reason of facts not appearing
on its face, and alleging that the ballots for the election
had been printed and in the time that remained before the
election it would be impossible to have other ballots printed.
The attorneys for various persons, officers of the Trade
Union Liberty League and United Societies or as individu-
als, filed a petition to be made defendants in the suit. The
petition to be made defendants was denied, but the court
ordered that the attorneys might appear and participate in
the cause as *amici curiæ*. The petition for the writ was

amended so as to pray that if for any reason a writ of *mandamus* could not be granted in time for the election of April 2, 1918, it should be granted for an election thereafter. On motion of the respondents that portion of the prayer was stricken out, and there remained no possibility of any relief being obtained in the superior court and no further action was taken in the case.

It is contended by counsel for the respondents that the fact alleged in their answer that the suit in which Coleman is relator is still undisposed of, precludes this court from ordering the writ prayed for. The respondents are not entitled to raise that question, because by the rules of pleading the pendency of another suit for the same purpose must be raised by a plea in abatement, and the respondents could not ask the judgment of the court on the merits by answer without waiving the plea in abatement. (*Silver* v. *People, supra.*) There would, however, have been no ground for abatement for at least two reasons. The superior court of Cook county and this court do not exercise concurrent jurisdiction in *mandamus.* The superior court exercises such jurisdiction generally, but the exercise of the jurisdiction by this court is discretionary, and the court will assume jurisdiction in cases only where there is a special reason and the remedy in the trial court is ineffective, and this court may take jurisdiction on that ground although a proceeding is pending in a local court. A second reason is that the superior court, on motion of the respondents, struck from the amended petition the prayer for a writ commanding submission at a subsequent election, leaving the petition asking for submission at an election now long passed.

It is also argued that the relator is not entitled to relief because of *laches,* and this argument seems to be seriously made and not as mere entertainment. Generally the time limited for bringing actions at law is governed by statutes of limitation, but the equitable doctrine of *laches* is ap-

plied in some kinds of actions at law where the court may exercise judicial discretion and there has been such delay in asserting a right as to justify the exercise of such discretion in denial of relief. In this case there was no possibility of an effective final judgment in the Coleman case in time for the election of 1918, and the superior court having stricken out the prayer for any other relief, resort· to this court was necessary in the judgment of the court and leave was given to file the petition. There is no ground for a claim of *laches.*

It is further contended that the respondents, in any event, are entitled to a trial of the issue whether or not they made a proper comparison with the books in their office. But if they had no right, as a matter of law, to make any investigation and comparison they would have no right to a trial of an issue whether the comparison was proper or not. There is, however, no issue of fact to be determined. The answer does not deny any material fact alleged and there is no controversy concerning what the respondents did, but the only dispute is whether they had a right to do it. That is the material question and was settled by this court in *People* v. *Dillon,* 266 Ill. 272. It was distinctly and plainly held that the clerk could not institute an investigation to determine whether the parties signing a petition were legal voters, whether they signed in their proper persons, whether the statement at the bottom of each sheet was made by an authorized person, or whether the petition was sworn to before an officer authorized to administer an oath. The court decided that the statute imposes the absolute duty to submit the question to be voted upon when a petition proper on its face is filed in compliance with the statute. The right, however, is claimed on the ground that a board of election commissioners constitutes a superior class to ordinary clerks, with greater powers and authority. But that claim is negatived, so far as the Local Option act is concerned, by the express

287 – 8

provision in section 1 that the word "clerk" shall mean the board of election commissioners of any city, village or incorporated town in this State in which there was then or thereafter might be a board of election commissioners. The respondents are not superior in any respect to clerks and are not invested with any power or discretion not possessed by any other official required to perform the duty of submission.

Counsel for the respondents also seeks to sustain their action on the ground that the evidence upon which they held the petition insufficient was in their own office. In making the investigation their clerk took the registration lists and the cards made, as before stated, and twenty per cent of the names on the cards which were rejected were those of women who signed with the prefix "Mrs." and their husbands' christian names instead of their own christian names but at their husbands' addresses on the registry list. The number of names so rejected was 9947, and it was done without any investigation as to the identity of the registered voter and the petitioner. A large number of names were rejected where the word "Miss" or "Mrs." appeared on the registration list and not on the petition, and others were rejected where the registration list showed a middle initial and the petition did not, or *vice versa*. Others were rejected where the full christian name was registered and there was an initial, only, on the petition, or where the registered list showed an initial and the petition the full name. In February, 1918, the respondents revised the registered list, and where a voter had moved or otherwise ceased to be a registered voter at the residence given, his name was erased by running a line through his name and address, but all the names on the petition were signed prior to that revision and the number so rejected was 4973. It will at once be seen that if the respondents had authority to make any investigation they could not determine the facts without going outside of their own office. But the

source of the evidence is utterly immaterial. There is no law of judicial notice which applies to the respondents in any manner, and if such law did apply it is only a rule of evidence. The law is that they had no power to go beyond what appeared on the face of the petition for the purpose of determining whether the signatures were those of legal voters, and there were proper signatures far in excess of the number required by the statute. The action of the respondents was illegal, a usurpation of authority and in defiance of the law as declared by this court.

A writ of *mandamus* will not be ordered directing the performance of an act which the respondents have no authority or duty to perform and which would be illegal, and counsel invokes this doctrine and supports it by an argument that no valid election can now be held upon the petition because the time fixed in the petition for holding the election has passed. It is true that the remedy by *mandamus* sometimes proves ineffectual, and if it appears that the process of the court cannot become effective the writ will not be granted for that reason. Gross injustice may be done by the action of election officials in refusing to put the name of a candidate on the ballot for an office to be filled at a certain time and where the writ cannot be obtained in time for the election or his right may be defeated by an appeal. Injustice may also be done to petitioners, as was the case in *People* v. *Knoll,* 276 Ill. 58, and *People* v. *Dillon, supra,* where the judgments of the circuit courts were right and this court could do nothing to affirm them. There are, however, duties which are continuing in their nature, and the courts can enforce their performance at any time by the writ of *mandamus.* It would be a reproach to the law if there is a right and no means to vindicate and maintain it, and that would be the case if the respondents, by refusing to perform their duty, have absolved themselves from all obligations of the law. There are many cases of continuing duties although a specific time is pro-

vided for their performance. An example of such a duty is the provision of the constitution in section 6 of article 4 that the General Assembly shall apportion the State every ten years, beginning with the year 1871, but, although the constitution fixes the time when an apportionment shall be made, the duty and power are continuing in their nature and the apportionment can be made at any time afterward within the ten-year period. *People* v. *Hutchinson,* 172 Ill. 486; *People* v. *Carlock,* 198 id. 150.

In the argument that the writ should not be awarded on account of *laches* it is insisted that if the petitioners had kept busy they could have compelled the submission of the question at the election in November, 1918, when the municipal judges were elected, which is the only ground for insisting upon the denial of the writ on account of delay and is an admission that the duty is of a continuing nature and the obligation to perform it exists until it is performed, but on the question whether a submission of the question at a subsequent election would be illegal it is contended that it could only be submitted at the election in April, 1918. The petition asked for submission at the next election but did not name any date, and the substantial right was to have the question submitted to the voters, and there are regularly occurring elections at which it could be submitted. It would be contrary to reason and every instinct of justice and right that a refusal of the respondents to perform their duty at the first of those elections should enable them to defeat the law and the right of the petitioners.

This court had a similar question before it in *State Board of Equalization* v. *People,* 191 Ill. 528. The State Board of Equalization on October 17, 1900, was requested by petition to assess certain capital stock on the basis of values therein stated. The board did not comply with the request but made a different assessment and adjourned *sine die.* Nothing was done to compel the performance of the duty, which should have been performed when requested,

until the following March, when a petition for a writ of *mandamus* was filed in the circuit court of Sangamon county and there was a trial, and on May 1, 1901, judgment was rendered awarding the writ. An appeal was prosecuted to this court and the case was decided on October 24, 1901, a year after the duty was required by law to be performed. It was contended that the court should have declined to grant the writ because it would be without practical results, as the State board had adjourned its annual session. The State Board of Equalization being a continuing body, the court followed the rule declared in *People* v. *Supervisor,* 100 Ill. 332, that where a continuing duty is incumbent upon public officers it may be enforced against such officers and their successors, and the judgment was affirmed. The board of election commissioners is a continuing body and the same rule applies to the respondents. There can be no doubt, we think, that the law was correctly stated in *Lewis* v. *Commissioners of Marshall County,* 16 Kan. 102, as follows: "As a general rule, when a duty is at the proper time asked to be done and improperly refused to be done, the right to compel it to be done is fixed and is not destroyed by the lapse of time within which, in the first place, the duty ought to have been done."

In *State* v. *Holcomb,* 81 Kan. 879, it was decided that an officer cannot set up an excuse that the time fixed by the statute to correct an assessment or enter omitted property has passed when it was his own failure to perform the duty within the statutory time which made it necessary to bring the *mandamus* proceeding, and by the same rule the respondents cannot evade their duty by answering that the time for its performance has passed when it still may be lawfully performed. None of the subterfuges adopted by the respondents as an excuse for failure to perform the duty enjoined by law and none of the reasons offered in argument justify a refusal of the writ.

Thè writ of *mandamus* is awarded as prayed for, commanding the respondents, August Lueders, Bernard Horwich and Frank X. Rydzewski, or the successors in office of them or any or either of them, to cause notice to be given in the manner provided by law that the proposition, "Shall this city become anti-saloon territory," will be submitted to the voters at the next election of officers in the city of Chicago to be held on Tuesday, April 1, 1919, and shall cause the said proposition to be printed on the ballots to be used at said election and do and perform all other acts required by law for the submission of said proposition at said election.                    *Writ awarded.*

Mr. CHIEF JUSTICE DUNCAN, dissenting.