The People *ex rel.* Frederick Arnd, Defendant in Error, *vs.* Martin O. Heckard *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1930.*

Samuel A. Ettelson, Corporation Counsel, and Francis J. Vurpillat, for plaintiffs in error.

Mr. Justice Orr delivered the opinion of the court:

On January 5, 1929, the circuit court of Cook county awarded a writ of *mandamus* petitioned for by the relator, Frederick Arnd, a resident and tax-payer of Cook county, against the defendants, directing them to deposit with the

county clerk of Cook county certain records of births, still-births and deaths in the time and manner specified in the judgment rendered. On appeal the judgment of the circuit court was affirmed by the Appellate Court for the First District, and the case comes here for review by writ of *certiorari*.

By his petition relator alleged that on May 4, 1928, he made written demand upon Robert M. Sweitzer, county clerk of Cook county, for certified copies of death certificates of his two brothers, at the time tendering the proper fees; that Sweitzer said he could not comply with the demand because the registrar of vital statistics for the city of Chicago had not deposited any records of births or deaths with him, as county clerk, since the year 1915. By their answer defendants claimed impossibility of performance by them since 1918, alleging that their failure to file such records was not occasioned by their own fault but because no money had been appropriated by the Chicago city council since 1918 to pay for this work; that in the years 1915, 1916, 1917 and 1918 the persons then serving as health commissioner and local registrar of Chicago prepared full and complete certified records of the registration of births and deaths in the Chicago district with money appropriated by the city council for that purpose and with the understanding that the moneys so appropriated would be re-paid by Cook county, but said county and its officers, upon demand, failed and refused to reimburse the city of Chicago for the moneys thus expended and have since refused to make any appropriation therefor; that the certified records of births and deaths prepared for the years 1915 to 1918, inclusive, were tendered by the registrar of Chicago for filing in the county clerk's office but were refused on the ground that they were not needed and would not be paid for by Cook county, and that from the year 1919 to the present time the Chicago city council has made no appropriation whatever to pay for preparing such certified copies, but, on the contrary, adopted a resolution in 1919 directing the Chicago health department

to discontinue making further certificates for the county clerk's office. These facts set up in defendants' answer were all admitted by a general demurrer of relator, which was sustained by the circuit court, with a ruling that defendants further answer the petition instanter, and upon their failure or refusal to answer further the writ of *mandamus* was awarded.

The act of 1915 which provides for the registration of births and deaths, as amended in 1917, (Smith's Stat. 1929, pp. 2222-2227,) provides for the filing of birth and death certificates with local registrars, who are required to transmit such original certificates to the State Board of Health after having made a copy or copies thereof on forms to be furnished or in a record book. (Sec. 18.) The act also provides by section 18, among other things, as follows: "Local registrars shall deposit with the county clerks of their respective counties on the tenth day of each month, one complete set of the records of births, stillbirths and deaths registered with them during the preceding month, and the county clerks are charged with the binding and indexing, or recording, and safekeeping of such records." That section also, as applied to the city of Chicago, provides that the city "may cause to be made extra copies" of such birth or death certificates filed with the local registrar, "such extra copies to be in addition to those copies which are required to be made for and turned over to the county clerk, as provided for in this act, and such extra copies may be retained by any city, incorporated town or village as its permanent record."

The statute thus makes the local registrar a receiving agent to receive the original birth and death certificates, to file them with the State Board of Health and to file a copy with the county clerk, who is to keep the record for the entire county. The act does not require the local registrars or the cities to make and retain in their files any permanent record, although it permits the city to do so, at its option

and at its own expense. As will later appear, the act provides that the city shall be reimbursed for receiving the original certificates, sending them to the State Board of Health and delivering a copy to the county clerk.

From the wording of this act we believe that the first copy of the record of births and deaths made by the local registrar is the one required to be turned over by him to the county clerk, and that in case the local registrar, or the city for which he is acting, desires another copy or copies for his permanent record, such city must make such copies for itself and at its own expense. If a record has been made by the local registrar and is now on file in his office or under his control, it is his duty to turn that record over to the county clerk even though the city or the local registrar will then have no record of his own.

As against the foregoing construction of section 18 it may be said that since section 20 of the act requires not only the county clerk but also the local registrar to issue a certified copy of birth or death certificates on demand by any applicant entitled to the same, the act contemplates that the local registrar shall keep a permanent record for that purpose. This apparent inconsistency between sections 18 and 20 as they now exist can be explained by a consideration of section 18 of the act of 1915 as originally passed. That section originally required the local registrar to file a copy of the records with the county clerk within sixty days after the close of each calendar year. (Hurd's Stat. 1915, p. 2479.) Since the local registrar was thus permitted to retain such a record in his possession during the entire calendar year he was in position during that year to issue certified copies of certificates with respect to births and deaths occurring during that year. Moreover, section 20, in requiring the local registrar to issue certified copies to all applicants, may be construed as applicable to local registrars only in the event the city has elected, in accordance with the provisions of section 18, to keep a permanent rec-

ord for that purpose, which is made entirely optional with the city. If this be the intent of sections 18 and 20 as originally passed there is no inconsistency between those sections, and this construction would seem to be still applicable, notwithstanding the amendment in 1917 of section 18, to require the registrar to file a copy of the record with the county clerk monthly—*i. e.*, within ten days after the close of each calendar month—instead of, as originally, within sixty days after the close of each calendar year.

Section 20 of the act, considered in the light of section 18 as now amended, has a double but not conflicting purpose. Under it the local registrar is required to issue certified copies on application so long as he has the records in his office—that is, in any event, during a current calendar month. Under section 20 the local registrar is also required to issue such certified copies to any applicant at any time, if, as permitted by section 18, the city shall have made extra copies as its permanent record, which, as previously stated, was left optional with the city. In view of the foregoing there is no irreconcilable conflict between section 20 and section 18, even if the latter section be construed as requiring the registrar to file with the county clerk the first and only copy he makes of the records.

Section 19 of the act provides that the registrar shall receive a fee of twenty-five cents for each birth or death certificate filed with him up to the first 5000 certificates and ten cents for each certificate thereafter, provided, however, that the originals of all such certificates shall have been turned over by him to the State Board of Health and that accurate copies of such certificates shall have been made and turned over by him to the county clerk of his county, as provided for in the act. This section also contains a proviso that where, as in the city of Chicago, the registration district is co-extensive with the city and registration is conducted under a local ordinance and the local registrar receives a fixed salary in lieu of fees, all fees received under

the act shall be paid into the treasury of such city. This section also provides that the State Board of Health, at the close of each calendar year, shall certify to the county clerk the number of births and deaths properly registered in his county, with the names of the persons entitled to the fees and the amount due each at the rate fixed in the act. The section also provides that the amount payable to local registrars under the provisions of the act are made and declared to be a charge upon the county in which the fees accrue, and the county clerk, or other county officer to whom warrants upon the county treasurer are issued, shall issue to such local registrar his warrant to the county treasurer of the county for the amount of fees due such registrar as certified to by the State Board of Health, and the county treasurer shall pay the same upon presentation. This section also makes it the duty of the board of county commissioners to appropriate such amounts as may be necessary for efficiently carrying out the provisions of the act. Section 20 requires the county clerk, on request, to furnish a certified copy of the record of any birth or death upon payment of a fee of fifty cents.

It is apparent from the foregoing that the local registrar is required to furnish monthly to the county clerk a record of the births and deaths of the preceding month, and neither the registrar, nor the city constituting the registration district for which the registrar is acting, is entitled to any compensation therefor, either under the act or otherwise, until the end of the calendar year, at which time, if the local registrar has turned over the original certificates to the State Board of Health and has turned over copies of the certificates to the county clerk, it becomes the duty of the State Board of Health to certify to the county clerk the fees due and payable by the county to the registrar or the city. It is then for the first time that the county clerk, or other county officer by whom warrants on the county treasurer are issued, is required to issue to the local registrar his warrant upon

the county treasurer for the amount of the fees due the registrar under the act and thereupon the county treasurer is required to pay the same upon presentation. It is thus seen that the county board is not required to make an appropriation until the amount of the fees due the local registrar is certified by the State Board of Health, although it would be possible for the county board to make an appropriation of approximately the correct amount even before such certificate was issued by the State Board of Health. Section 22 of the act provides that "each local registrar is hereby charged with the strict and thorough enforcement of the provisions of this act in his district under the supervision and direction of the State Board of Health." The failure of defendants to comply with the above mentioned statutory requirements is not disputed. They have not filed certified copies of the records of births, stillbirths and deaths in the county clerk's office, as required by law. Nor is there any doubt under the existing circumstances but that the relator and the public generally have a clear legal right for which *mandamus* is an appropriate remedy.

The record does not indicate whether the defendant Heckard has within his control a set of the records of births and deaths from 1919 to the present time. If such records were prepared by the local registrar he was required by law to turn them over to the county clerk, and if he now has such a record the writ was properly awarded against him for that purpose. If these records are now available there is no impossibility of performance, such as would excuse the defendants from complying with the statute or from complying with the writ awarded by the lower court. The statute makes clear the duty which the local registrar is required to perform, and the facts are equally as clear that he has failed to perform those duties. If the excuse set up is impossibility of performance, which is a condition brought about by his own previous disobedience of the command of the legislature, it will not avail, as he cannot take

advantage of his own wrong. (*People* v. *Salomon,* 54 Ill. 39.) An officer cannot set up an excuse that the time fixed by the statute to collect an assessment or enter omitted proof has passed, when it was his own failure to perform the duty within the statutory time which made it necessary to institute the *mandamus* proceeding. (*State* v. *Holcomb,* 81 Kan. 879.) The defendants cannot evade their duty by answering that the time for its performance has passed when it still may be lawfully performed. (*People* v. *Lueders,* 287 Ill. 107.) This principle applies where the impossibility of performance results from the fact that the acts commanded are beyond the lawful power and authority of defendants. *Ex parte Rowland,* 104 U. S. 604; 38 Corpus Juris, 937.

Admittedly the records for the years 1915 to 1918, inclusive, are in the hands of the local registrar, and he should turn them over to the county clerk immediately, notwithstanding the failure, as alleged, of the county to reimburse the city for the cost of compiling the records. Although the county clerk is alleged to have refused to accept the records for the period from 1915 to 1918 on condition that the county reimburse the city for the cost of preparing the records, there is nothing to indicate that he has refused or would refuse to accept and file them in accordance with the statute, or that he would refuse to issue a warrant for the fees at the statutory rates upon receiving a certificate therefor, at the end of each calendar year, from the State Board of Health. The refusal of the county clerk to accept the records for 1915-1918 tendered by the local registrar upon the condition that the county reimburse the city for the moneys expended in their preparation was justifiable. There is nothing to indicate that the county clerk has refused, or would refuse, to accept and file such records if tendered to him unconditionally, as contemplated by the act. In any event, the mere statement of the county clerk, or some other officer of the county, that the county did not

need and would not pay for the records would not justify the local registrar in failing to file them for all the years in question. Filing was to be done monthly. Payment of the statutory fees was to be made after the end of each calendar year. Moreover, as to the period after 1918 it is clear the county clerk did not neglect or refuse to perform any duty, since the records were not even tendered to him for filing.

As disclosed by the record in this case, the clear provisions of the statutes of Illinois requiring a complete set of birth and death records to be kept in the office of the county clerk of each county have been disregarded for fifteen years so far as Cook county is concerned. The legislature has designated the county clerk's office as the one place in each county where these important records must be filed and recorded. Their preservation in one central office in each county is a matter of great public convenience. If part of these vital statistics in Cook county are to be kept in the county clerk's office and another part at the office of the local registrar much inconvenience and uncertainty will result.

Since complete relief cannot be obtained under the writ as awarded against these defendants, it becomes the duty of the circuit court in this proceeding to amend the writ. The judgment order entered by the circuit court on January 5, 1929, was only directed to the preparation of certificates of births and deaths from and after January 1, 1928. This order should be amended, directing the city of Chicago, the local registrar, the commissioner of health, or other person in whose custody they may be found, to deposit one set of the certified copies of birth, stillbirth and death records admittedly prepared for the years 1915, 1916, 1917 and 1918, with the county clerk of Cook county. If it is disclosed, upon proper proceedings for that purpose in the circuit court, that the local registrar of the city of Chicago has heretofore prepared a copy of such birth, still-

birth and death records from January 1, 1919, up to the present time, then such copy, even if prepared for the use of the city, should likewise be ordered deposited with the county clerk. Permission and time should be given by the circuit court to the city within which to prepare copies of these records for its own files, if it so desires. If it should be disclosed to the circuit court that the city of Chicago does not have even one copy of such records for its own use since January 1, 1919, then sufficient time should be granted to the defendants to enable them to procure such copy for depositing with the county clerk from the original records kept by the State Board of Health.

The validity of the act concerning registration of births and deaths is not involved here, as no such question was raised by any of the parties to this proceeding.

The prayer for the writ of *mandamus* in this case was for the depositing with the county clerk of Cook county of a complete set of the records of births, stillbirths and deaths registered with the local registrar of Chicago since 1915. The judgment order of the circuit court of Cook county of January 5, 1929, which was sustained by the Appellate Court, directed defendants to deposit such records with the county clerk only from and after January 1, 1928. This order did not grant complete relief and made no provision for compliance with the statute for the years 1915 to 1927, inclusive. Full and complete relief over this entire period should be granted.

The judgment of the Appellate Court is therefore affirmed in part and reversed in part and the cause remanded to the circuit court of Cook county for further action in accordance with the directions embodied in this opinion.

*Reversed in part and remanded, with directions.*