(No. 22426.—

THE PEOPLE *ex rel.* William F. Brecheisen, Appellee, *vs.* THE BOARD OF REVIEW OF LAKE COUNTY *et al.* Appellants.

*Opinion filed February 14, 1936—Rehearing denied April 8, 1936.*

FARTHING and HERRICK, JJ., dissenting.
SHAW, J., specially concurring.

MAX PRZYBORSKI, and HAROLD J. TALLETT, for appellants.

ASHBEL V. SMITH, DANIEL S. WENTWORTH, ROBERT F. DEWEY, and LEON WEISS, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

A petition for a writ of *mandamus* was filed in the circuit court of Lake county against the board of review of that county, and the members thereof, to coerce it forthwith to value and assess the personal property of the Waukegan Generating Company and to correct its books to conform to such assessment. The petition was later amended, and respondents filed a general and special demurrer to the second amended petition. The demurrer was overruled and the writ of *mandamus* was awarded. Respondents, who abided their demurrer, have brought the case here by direct appeal, the revenue being involved.

In the view we take of this case, it will not be necessary for us to consider the merits of the petition or the alleged abuse of discretion on the part of the board of review in making an assessment termed by the petition as arbitrary and fraudulent. The original petition was filed on December 13, 1933, forty-one days after the board of review of Lake county had completed its duties, closed its books and adjourned. The second amended petition was filed on January 18, 1934. The general and special demurrers were filed on January 23, 1934, attacking the petition on the

ground that there was no duty or authority on the part of respondents to do the acts sought to be coerced. It is this point, and the alleged error of the trial court's ruling thereon, which we shall consider.

We have often held that boards of review have only such authority as is expressly given them by statute. (*People* v. *Sheridan-Brompton Building Corp.* 331 Ill. 495; *People* v. *Keogh,* 306 id. 323.) Section 30 of the Revenue act of 1898 (Cahill's Stat. 1933, p. 2363; Smith's Stat. 1933, p. 2416,) provides for a board of review of three members in counties under township organization and having less than 150,000 inhabitants. Lake county is in this classification. Section 34 of the Revenue act of 1898 provides that the final adjournment of the board shall be on or before the 7th of September, except as is provided in counties containing 250,000 or more inhabitants. Section 38 provides that on or before the 7th day of September, annually, the board shall complete its work and shall make entries in the assessment books required to make the assessment conform to the changes made by the board, and shall attach to the books an affidavit as prescribed in the section. Section 38 further provides that in counties of 250,000 or more inhabitants the board of appeals (formerly the board of review) "shall also meet from time to time and whenever necessary to consider and act upon complaints and to further revise the assessment of real property as may be just and necessary." There is no such provision with respect to boards of review in counties such as Lake, which have less than 150,000 inhabitants. Section 43 of the Revenue act of 1898 provides that when the books are so completed, the board of review shall deliver one set of the books to the county clerk, who shall file it in his office, and one set to the supervisor of assessments and that the assessments so completed and certified to the county clerk, and as equalized by law "shall be the assessment upon which the taxes of that year shall be extended by the county clerk."

The statutory provisions, supplemented by our own decisions, disclose that the board of review lacked power after its final adjournment to re-convene and re-assess the property of the Waukegan Generating Company. The case of *Barkley* v. *Dale,* 213 Ill. 614, is squarely in point and decisive of this question. In the *Barkley case,* the board of review met on July 8, 1903. On the 28th day of the following September, it returned to the county clerk the assessment books, with the necessary affidavits attached thereto, showing it had completed its work for the year 1903. Prior to September 28, 1903, it had notified Barkley to appear on October 7, 1903, before the board for examination as to his property, for the purposes of assessment. The taxpayer appeared on October 8, and on subsequent days, and was examined by the board. It did not make a report to the county clerk of the amount of omitted credits asssessed against Barkley until December 4, 1903. On these facts the tax-payer made the contention that the board of review, after September 28, 1903, was without jurisdiction to make the assessments for omitted credits against him. This contention was sustained. In construing the various statutory provisions, we there said (p. 618) : "Section 34 of the act of 1898, by which boards of review were created, provides that such boards shall meet on or before the second Monday of July in each year for the purpose of revising the assessments of property in their county. Paragraph 1 of section 35 of said act defines the duties of said board, and among other things provides the board shall assess all property subject to assessment which shall not have been assessed by the assessors; * * * and by section 38 of the former act it is provided that the board of review shall, on or before the 7th day of September, annually, complete its work, and make, or cause to be made, the entries in the assessment books required to make the assessment conform to the changes made therein by the board of review, and shall attach to each of said books an

affidavit signed by at least two members of said board, a form of which affidavit is given, and which states that the books returned contain a full and complete list of the real and personal property in said county subject to taxation for said year; and section 40 provides that a failure to complete an assessment in the time provided by law shall not vitiate the assessment; and a proviso to section 38 is to the effect that in counties containing 125,000 or more inhabitants, within which class Vermilion county does not fall, the board of review shall meet from time to time, and whenever necessary, to consider and act upon complaints, and to further revise the assessment of real property as may be just and necessary; and section 43 provides, when the books are completed, for the return of those containing the assessment of personal property to the county clerk, who shall file the same in his office, and that the assessment so completed by the board of review, and as equalized by the State Board of Equalization, as provided by law, shall be the assessment upon which the taxes for the year shall be extended by the county clerk.

"We think, from a consideration of all of said sections, that the provision in section 38 that boards of review shall complete their work on or before the 7th day of September, annually, in view of section 40, is so far directory that the board may continue its sessions until it has completed the work then pending before it, and is prepared to return the assessment books to the county clerk. It is clear, however, when a board of review has completed its work and attached the necessary affidavit to the assessment books and returned said books to the county clerk, that the jurisdiction to act as said board of review for that year, except in counties of 125,000 or more inhabitants, which is covered by the proviso to section 38, has ceased, and that an assessment of omitted credits made by the board of review after the assessment books have been returned by the board to the county clerk is void."

Similarly, in a later case, *Kimball & Co.* v. *O'Connell,* 263 Ill. 232, the language above quoted in the *Barkley case* was approved and adopted in a situation almost identical with the one we are now considering. There again this court quoted with approval the construction of sections 38, 40 and 43 considered in the *Barkley case,* and in addition, said: "In *Carney* v. *People,* 210 Ill. 434, this court had under consideration the proviso contained in the latter part of section 38, with reference to the board of review in counties with over 125,000 inhabitants, and on page 441, we said: 'The latter provision must necessarily be limited to the time that the board of review has control of the assessment books. When the books are completed and delivered to the county clerk, the assessment as completed and as equalized by the State Board of Equalization is the assessment upon which the taxes are to be extended and upon which the rate per cent of the taxes is to be computed. An original assessment may therefore be made by the board of review up to the moment the books are returned.' * * * On July 1, the board of assessors, having completed the revision of their assessment and having appended to the assessment books the required affidavit signed by them, had no further power, by the express provisions of section 23, to change the assessment or alter the assessment books so as to change or affect the taxes of that year."·

In *People* v. *Mottinger,* 212 Ill. 530, a motion was made to file a petition for *mandamus,* directed to the county clerk of Will county and to two justices of the peace who had served with the clerk as canvassers of certain election returns. The board had acted and the relief sought was for it to meet again and make another canvass. This court denied the motion, saying at page 531: "It may be said with reference to this motion and petition, that this canvassing board which we are asked to control by *mandamus* is not one of any permanent duration. * * * When the

board has performed its duties, whether well or otherwise, its official existence as a canvassing board is gone. The members of it have resumed their ordinary stations in life as individuals. They cannot any longer be said to be a canvassing board after the time that their duties have been performed. It is well recognized that a writ of *mandamus* will not issue against individuals as such, but must be against some person or persons clothed with authority to do the act sought to be compelled. These persons are no longer in authority, and on this phase of the petition the court has very great doubt of its power to issue an order to these individuals to re-assemble and re-organize and then do some act differently from what they have already done. * * * If this canvassing board were now in existence and in session and were refusing to do its duty,—refusing to act,—the court might be asked to require it to act. But it has, in fact, acted. The petitioner says it has acted improperly. If that be true it is not a ground for a writ of *mandamus* to make it now act properly." This same construction was adopted later in a similar case, *Donahoe* v. *Owens,* 277 Ill. 318.

The legislature, in fixing the time for final adjournment of boards of review, must have recognized that there must be finality at some reasonably certain time each year in the process of assessing property for taxation, in order that the State Board of Equalization might function, the rates be determined, and the taxes extended and collected annually with some degree of regularity and dispatch. In view of the foregoing authorities, we are satisfied that when the board of review of Lake county finally adjourned according to law on November 2, 1933, it was without power to reconvene in connection with any re-assessment or new assessment of taxes for that year. The writ of *mandamus* confers no new authority upon the person or body against whom it is issued—it creates no duty, but will issue only where the duty and authority to act already exist without

the writ. *People* v. *Dunne,* 258 Ill. 441; *Hooper* v. *Snow,* 325 id. 53.

The judgment of the circuit court of Lake county is reversed and the cause is remanded with directions to sustain the demurrer and deny the writ.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARTHING, dissenting:

In my opinion the decision of the majority of this court is based upon cases which are not in point. In *Barkley* v. *Dale,* 213 Ill. 614, the board of review attempted to act upon its own motion after it had completed its work for the year, attached the affidavit to the books and delivered them to the county clerk. No question of a fraudulent omission to act was involved. The same is true of *Kimball & Co.* v. *O'Connell,* 263 Ill. 232, where the board of assessors made its assessment of the tangible property of the appellant and returned the assessment to the board of review on July 1, 1912, with the affidavit attached, as required by section 23 of the Revenue act of 1898. The board of review made a review of the assessment and on September 12, 1912, made its affidavit and attached it to the books. On October 12, 1912, the board of assessors of its own motion attempted to make an assessment on the capital stock of the appellant, which the board of review confirmed on October 23, 1912. We held that no assessment could be made by voluntary action of the taxing bodies after the time for such assessment had expired by law. That case, also, did not involve a fraudulent omission to perform a duty.

In *Carney* v. *People,* 210 Ill. 434, we held that even in counties of 250,000 inhabitants, where the then board of review (now board of appeals) was authorized to meet from time to time to make assessments, the board must act of its own motion while it has control of the books, and that it can consider the complaints of property owners only dur-

ing such time. But this was in connection with the holding that where the board makes an original assessment, notice must be given the property owner, who otherwise would be deprived of a hearing. We also held that the property owner need not follow the board of review's proceedings by constant attendance on its meetings, but is entitled to a notice and a hearing if an original assessment was to be made. That case did not involve a fraudulent assessment or a fraudulent omission to assess.

In *People* v. *Mottinger*, 212 Ill. 530, we refused to *mandamus* an election canvassing board to re-assemble and make a new canvass. That board had acted, performed its duties and had gone out of existence. It was not a continuing body, and, whether it had acted well or ill, it could not be compelled to re-assemble or to act again. An election contest was held to be the proper remedy. There was no charge of fraudulent action or failure to perform a duty.

As the case now stands, no tax-payer can challenge the action of a board of review after adjournment, and these boards cannot be compelled to re-assemble. If the board of review refuses to act, or acts fraudulently, as charged here, only the State Tax Commission can order the board of review to meet in extraordinary session, and in view of this decision even that power is doubtful. It is even doubtful if our decision in *Lambrecht* v. *Wilson*, 290 Ill. 547, will avail to permit the board of review in a succeeding year to make the assessment, on the theory that because the assessment was so grossly inadequate it amounts in law to no assessment and to a fraud upon the State.

I admit that a board of review cannot re-convene and act on its own motion, as shown by the *Barkley* and *Kimball cases,* but if a court cannot by *mandamus* compel the performance of an admitted statutory duty, I can see no reason why the State Tax Commission should have the power to call back into life and being the board of review after its final adjournment and delivery of its books to the

county clerk. Let us assume that a tax-payer filed his complaint because his property, the fair cash market value of which is $500, was assessed at $100,000, and the board of review neglected, failed and refused to act and denied this tax-payer a hearing on his complaint and immediately adjourned. We said in *People* v. *Beemsterboer*, 356 Ill. 432: "Plaintiff in error made no attempt to compel the board of review to give him a hearing upon his complaint. Under the repeated decisions of this court he thereby waived his right to raise the question of over-assessment in the county court upon application of the county collector for judgment. If the board neglected or refused to act and review an alleged fraudulent assessment his remedy was by *mandamus*. Having failed to pursue his remedy to compel a hearing by the board of review the county court properly overruled his objections to the assessment.—*People* v. *Cesar, supra; People* v. *Goldberg*, 354 Ill. 423; *Loewenthal* v. *People*, 192 id. 222." In the *Beemsterboer case* the objection to the application for judgment and order of sale was one filed in the county court of Cook county, but there ought not be a right to *mandamus* in Cook and St. Clair counties alone, yet this seems to be the inescapable result of the majority opinion.

In *People* v. *Outwater*, 360 Ill. 621, we said at page 624: "Courts have no power to fix the value of property for taxation, and before a tax-payer may resort to the courts for relief he must show that he has been diligent in pursuing his remedy to have the assessment corrected by the board of review or that he was prevented from pursuing such remedy by fraud, accident or mistake. (*Kinderman* v. *Harding*, 345 Ill. 237; *People* v. *Hart*, 332 id. 467.) Appellants here made no attempt to compel the board of review to give them a hearing upon their complaint, and no showing is made that they were prevented from pursuing this remedy by fraud, accident or mistake. Under repeated decisions of this court they thereby waived their right to question the alleged over-assessment in the county court

upon application of the county collector for judgment.
* * * If, as is claimed here, the board has neglected
or refused to act and review the alleged fraudulent assess-
ment their remedy was by *mandamus.—People* v. *Cesar,*
349 Ill. 372; *People* v. *Goldberg,* 354 id. 423; *Loewenthal*
v. *People,* 192 id. 222." The *Outwater case* arose in Har-
din county, which has the same kind of board of review as
that in Lake county. If *mandamus* was the proper remedy
in Hardin county, as we said it was, it should have been
proper in the instant case.

The majority opinion ignores other sections than those
mentioned, contained in the Revenue act of 1898, which
have the effect of making boards of review continuing
bodies. Section 30 of that act (Ill. State Bar Stat. 1935,
chap. 120, par. 341,) provides that two of the three mem-
bers of the board shall be appointed for a definite time and
for the filling of vacancies. Section 35(7) of the same act
empowers the board, after final adjournment and before
the entry of a tax judgment, to issue certificates of errors
or mistakes and their causes, which certificates are admis-
sible in evidence in the county courts. Section 12 of the
Tax Commission act (Ill. State Bar Stat. 1935, chap. 120,
par. 117,) provides the State Tax Commission may at any
time, and from time to time, order boards of review in
counties such as Lake to convene in extraordinary session
to further revise, correct and equalize the assessment of
property. This is not limited to the time before final adjournment but has to do with further assessment and cor-
rection. These sections must be construed with those men-
tioned in the majority opinion, for all are *in pari materia.*
(*People* v. *Wallace,* 291 Ill. 465.) The case presented is
one in which a continuing body is permitted by a *sine die*
adjournment to evade the performance of its statutory
duty, for the demurrer admits that it made an assessment
which was so grossly inadequate that it was fraudulent and
amounted in law to no assessment whatever.

The majority opinion ignores many earlier decisions of this court which announce the wholesome principle that the performance of a duty may not be evaded by adjournment *sine die.* (*People* v. *Heckard,* 341 Ill. 144, 150; *People* v. *Lueders,* 287 id. 107, 116; *Board of Supervisors* v. *People,* 226 id. 576, 580; *Loewenthal* v. *People,* 192 id. 222; *People* v. *Board of Supervisors,* 185 id. 288, 293.) In those cases we said the adjournment was merely a subterfuge, and the writ was awarded. In the case at bar the board's adjournment was likewise a subterfuge.

The majority opinion also ignores the decision in *State Board of Equalization* v. *People,* 191 Ill. 528, in which *mandamus* was awarded to coerce the respondent to value and assess, in the manner provided by law, the capital stock, including franchises, of several corporations. The suit was filed before the board of equalization adjourned, but that body ignored the pendency of the suit, failed and refused to value the capital stock of some corporations at any amount whatever, and placed values so low on the stock of the remaining corporations as to amount in law to no assessment at all. In affirming the judgment of the trial court we held that the duty of the taxing body was mandatory and that its performance could be compelled even after adjournment. We said that an administrative body could not place itself beyond the coercive power of courts by adjournment *sine die,* and that where the duty sought to be enforced by *mandamus* is of a public nature and no one is empowered to demand its performance, the law imposing the duty stands as a continuing demand and removes the necessity for a prior demand and refusal before *mandamus* is invoked. In *People* v. *Webb,* 256 Ill. 364, a writ of *mandamus* was awarded to coerce the board of review of Cook county to assess property which had been omitted from taxation during previous years. That decision was in no way limited to counties of a given population, where the board of review may adjourn from time

to time, but the decision was based upon the broad proposition that *mandamus* will lie to compel assessing officers to discharge their duties in making a fair assessment of property.

For the reason that the majority opinion has entirely overlooked the principles above pointed out, I respectfully dissent therefrom.

Mr. JUSTICE HERRICK concurs in this dissent.

Mr. JUSTICE SHAW, specially concurring:

I concur in the reversal of the judgment in this case but not for the reasons stated in the foregoing. Upon that branch of the case I am in accord with the views expressed in the dissenting opinion of Mr. Justice Farthing. I am of the view that better and safer grounds for reversal are apparent upon the face of the petition.

The relator alleged himself to be a citizen and tax-payer of Waukegan, in Lake county, and that the then present members of the board of review were David VanPatten, James King and Frank Worack; that Russ Alford was assessor for the town of Waukegan in 1933; that the Waukegan Generating Company was a resident of and had its main place of business in said township and was a subsidiary of the Public Service Company of Northern Illinois; that it possessed a large amount of personal property in the township, including boilers, steam turbines, electric generators, pumps of different kinds, machinery and equipment for handling fuel, switch-boards, transformer sets, condensers, coal and other personal property, all of which were joined together so as to form a continuous unit or property for the production and distribution of electric energy; that because of this inter-relation of the various parts of said plant and because much of the machinery was especially designed for that company, the property as a whole and as a going concern had a value greatly in excess of the aggregate of the values of the separate items

composing it; that the plant furnished power to a territory 150 miles south of the Wisconsin-Illinois line and east and west a distance of 25 to 125 miles, serving 321 communities having a population of more than a million inhabitants, including 29,000 residential consumers and many large corporations; that the plant is of modern design, installed between 1923 and 1933, more than one-fourth of it less than two years old and approximately one-half of it less than three years old; that the total original cost of said plant, "including land improvements," was $28,496,142, and that of this sum the personal property represented an investment of $21,894,639. There are also allegations as to the funded debt of the company and its net earnings.

The amended petition further alleges that the company filed a schedule with the assessor for April 1, 1933, showing a full cash value of its personal property, including steam engines, boilers, etc., material and manufactured articles, tools, implements, machinery and office furniture in the sum of $803,240. It is further alleged that the assessor increased this valuation to $3,116,800; that the supervisor of assessments made no changes in the assessor's figures and that the company applied to the board of review for a reduction; that at a session held on November 1, 1933, the board of review reduced the total assessment to $1,200,000. It is further alleged that the value established by the board of review was so inadequate "as to show a gross abuse of discretion on the part of the said board of review and failure to exercise sound judgment and for that reason was fraudulently made and does not constitute a lawful assessment." It is further alleged that the board fraudulently adopted a wrong and illegal method and rule of ascertaining the value of the property "by considering said personal property as dismantled and offered for sale to a possible purchaser item by item, second-hand and as junk; that the first step in said method was to take the original historical cost of what was called the usable items of said property

as thus dismantled and deduct therefrom a value for depreciation based on a so-called ten-year life theory of said items of personal property, ten per cent being deducted from the original cost of each item each year from date of purchase, installation and construction up to ten years, after which said personal property was given no value; that the next step in said method was a further deduction for a supposed cost of removal from service of said item of personal property and placing same in condition for delivery to a possible purchaser f.o.b. cars at said plant; that under said method and rule no value was given to any so-called usable parts such as steam pipes, fittings, valves, pipe covers, machinery foundations, parts of boilers, fire-brick, water walls and other parts and items; that no value was given to items which under said methods of valuation it was supposed would cost more to remove than the same would sell for second-hand or as junk; that no value was given to said personal property not in use; that no value was given to said personal property for enhancement in value by installation and engineering cost; that said board of review willfully and arbitrarily disregarded the assessment and testimony of Russ Alford as to the fair cash value of said property; that said board arbitrarily refused to consider the fair cash market value as a unit formed and constituting a single continuous property operating for the purpose for which designed to a possible purchaser, or to the owner; that said board refused to take into consideration * * * what a prudent man would give for said property as a unit for a permanent investment, with a view to present and future income." It was alleged that neither the earnings of the company, its funded indebtedness nor its reports to the Commerce Commission were considered, and that by a gross abuse of discretion the value was fixed far below its fair cash value. The amended petition further alleged that all other personal property in Waukegan was assessed for taxation on a basis of twenty-five per cent

of its fair cash value while that of the generating company was fixed at nine and sixty-four hundredths per cent, and that by said reduction the company would pay sixty-one and one-half per-cent less taxes on its personal property in proportion to other property in the town. It is further alleged that the method followed by the board was one testified to by experts and witnesses of the Waukegan Generating Company at the hearing before the board, and that the value fixed was approximately that testified to by said witnesses and experts; that the hearing was had on October 9, 1933, and that the revision of the assessment was not made of record until November 1, 1933, the day before the board adjourned *sine die*. Finally, it is alleged that as a result of the decrease in assessment other taxpayers will suffer loss and increased burdens in proportion to tables set forth in the petition. It is prayed that *mandamus* may issue requiring the board to re-assemble and assess the property of the company at its fair cash value as of April 1, 1933, and to correct its books accordingly.

To the amended petition the respondents demurred generally and specially, but inasmuch as that portion of the demurrer which is special is more in the nature of an argument than a pleading it should be considered as general, only. The trial court overruled the demurrer, which appellants elected to stand by, overruled a motion in arrest of judgment, and ordered the peremptory writ of *mandamus* to be issued as prayed in the amended petition.

There are certain well established rules of law which have a bearing on these facts. In *People* v. *Henry,* 236 Ill. 124, it was sought by *mandamus* to compel certain drainage commissioners to change a system of drainage which they had adopted, as it was alleged, from selfish motives on the part of the commissioners and in fraud of the rights of the petitioner. In that case it was decided that a petitioner for *mandamus* must show a clear legal right to the writ, and that although the writ will lie to compel the per-

formance of a duty it cannot control discretion. We also said: "The general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion but is not a good pleading. The facts should be averred upon which the charge of fraud is based."

In *Sterling Gas Co. v. Higby,* 134 Ill. 557, on page 568, it was said: "The statement that the action of the board was fraudulent is the mere statement of the conclusion or opinion of the pleader. It devolves upon the party claiming fraud to state the facts relied upon as constituting it; and where the facts alleged do not necessarily amount to fraud, a demurrer to the bill does not admit fraud. The facts averred in the bill which it is claimed show fraud on the part of the board of equalization are to be taken most strongly against the pleader." In that case we also quoted from *Connecting Railway Co. v. People,* 119 Ill. 182, as follows: "Obviously, the fraud which may be urged against the assessment must, in general terms, have either consisted in a willful disregard, by the members of the board, of a known duty, for the purpose of producing a result which could not otherwise have been produced, or in their denying or preventing the tax-payer from doing something that he might lawfully do, and, but for being denied and prevented by them, would have done, which would or might have had the effect to have caused a lower valuation of the property to be made."

The property being assessed by the board of review in the case at bar was only the tangible property of the Waukegan Generating Company within the town of Waukegan. (*National Reserve Ins. Co. v. Shipton,* 314 Ill. 472.) Intangibles are subject to assessment by the State Tax Commission and not by the local authorities. (*Illinois Central Railroad Co. v. Carr,* 302 Ill. 172; *National Reserve Ins. Co. v. Shipton, supra.*) It was early held in this State that in a tax case the cost of machinery was no evidence of its value even though it had been constantly repaired, and in

the same case it was held that the bonded indebtedness of the company and advancing income through freight rates could not be considered. (*Chicago and Northwestern Railway Co.* v. *Boone County,* 44 Ill. 240.) In the absence of facts amounting to fraud the valuation fixed upon property for purposes of taxation is not subject to the supervision of the judicial department of government. *Burton Stock Car Co.* v. *Traeger,* 187 Ill. 9; *People* v. *Norton,* 358 id. 272.

Application of the foregoing principles materially limits the field of inquiry in the present case. Many, if not all, of the derogatory adverbs may be disregarded as conclusions and many of the allegations require no consideration by reason of their immateriality. Thus, the allegation that the board of review "willfully, knowingly, arbitrarily and fraudulently adopted and followed a wrong, improper and illegal method and rule," is reduced to a simple allegation that the board followed an improper method, thereby erring. The allegations as to the cost of the equipment, the funded debt of the company and its income are to be disregarded as immaterial. The allegation that the board refused to consider the enhancement in value of said property by reason of its being connected into an operating plant—a going concern and a part of a distribution system—is to be disregarded, as this alleged enhancement of value, if it existed, would be an intangible, probably under the jurisdiction of the State Tax Commission but certainly not subject to assessment by the local assessor or board of review. The allegation that no value was given to certain items, such as steam pipes, fittings, valves, pipe covers, machinery foundations, parts of boilers, fire-brick, etc., is of no avail to the petitioner for *mandamus* for two reasons: First, because it is not alleged they had any value; and second, because no facts are alleged showing these items to be personal property rather than fixtures.

Eliminating the improper allegations of conclusions and the immaterial averments, we arrive at a point where it would be necessary for us to hold that the judiciary can control the discretion reposed in administrative officers in order to grant the writ prayed for. The petition shows on its face that the review of assessment came on regularly to be heard before the board of review, and although it is alleged in the tenth paragraph thereof that the board failed to exercise sound judgment, and in other paragraphs that it adopted wrong methods of valuation, yet it nowhere appears that it acted arbitrarily or without consideration of evidence. On the other hand, it affirmatively appears that the board did hear the evidence of the assessor and that it heard the testimony of expert witnesses produced by the generating company and it is not alleged that it heard no other evidence. There is no allegation of fact from which bribery or corruption can be inferred, and under such circumstances the action of the board is not subject to the supervision of the judicial department of government. (*Burton Stock Car Co.* v. *Traeger, supra.*) In *County of Cook* v. *Columbia Ins. Co.* 329 Ill. 189, we said: "If the officers whose duty it is to assess property for taxation fail or refuse to perform that duty they may be compelled by *mandamus* to act, but no court can decide for them what their judgment is or ought to be. Assessors exercise a quasi-judicial authority, and when property is to be taxed by value, the value must be determined by their judgment and not by the judgment of some other public officer or tribunal.—4 Cooley on Taxation, (4th ed.) sec. 1601; *Loewenthal* v. *People,* 192 Ill. 222; *People* v. *Webb,* 256 id. 364."

For the foregoing reasons, rather than those expressed in the opinion adopted, I concur in the reversal of the judgment.