(No. 28765.— )
JAMES O. MONROE, Appellant, *vs.* PHILIP W. COLLINS, Director of Revenue, *et al.,* Appellees.

*Opinion filed March 20, 1946—Rehearing denied May 21, 1946.*

JAMES O. MONROE, of Collinsville, *pro se.*

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, and MURRAY MILNE, of counsel,) for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Plaintiff, James O. Monroe, is engaged in the business of printing and publishing in the city of Collinsville. Such business is subject to an occupational tax imposed under the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1945, chap. 120, par. 440 *et seq.*) On behalf of himself and other retailers of the State, he started this suit in the circuit court of Madison county against Philip W. Collins, Di-

rector of Revenue, and the Department of Revenue of the State. The prayer of the complaint was that the said Director and Department be enjoined (a) from collecting any of the tax imposed by the Retailers' Occupation Tax Act for a period of nine months; (b) or, as an alternative, that they be enjoined from collecting one half of the 2 per cent imposed by the statute for a period of 18 months, (c) or, as a further alternative, that they be enjoined from collecting any of the tax until such time as the balance in the general revenue fund of the State has been reduced to a sum not exceeding $15,000,000. The Director, in his official capacity, and the Department of Revenue moved to dismiss the cause. The motion was sustained. The revenue being involved, the cause came to this court by direct appeal.

The rates of tax imposed by the act and amendments thereto for various periods beginning with the effective date of the act, July 1, 1933, and continuing until July 1, 1941, are set forth in plaintiff's complaint. The present rate of 2 per cent became effective on the latter date and has continued since to be the rate per cent on which the tax is computed. It is alleged that for the years 1942 and 1943 the tax collected pursuant to the act totaled approximately $80,000,000 for each of said years, and that when the suit was started, in March, 1944, the trend pointed to an increase over the two preceding years. It is alleged that the revenue produced by the 2 per cent occupational tax, with revenue collected by the State from other sources is exceeding the appropriations made by the General Assembly. As a result of such excessive income, a large surplus has accumulated in the general revenue fund in the State treasury. The annual balances of such surplus, for the period 1934-1943 inclusive, ranged from a low on December 31, 1939, of a little over $6,000,000 to a peak on December 31, 1943, of $73,396,988.15. The balance of surplus averaged for the period stated would be slightly

in excess of $14,000,000, and plaintiff adopts a balance of $15,000,000 as sufficient to meet the needs of the State and to account for fluctuations in the income. The prayer is for an injunction to enjoin the collection of a part or all of the occupational tax until the expenses of State government reduced the surplus in the general revenue fund to $15,000,000.

The complaint was drawn on the theory that section 1 of article IX of the constitution, which directs that "The general assembly shall provide such revenue as may be needful by levying a tax" is a restriction upon the power of the General Assembly requiring it to limit the revenue to such an amount "as may be needful."

Defendants assigned several grounds in support of their motion to dismiss but only two will be considered, namely, that this action is barred by a prior judgment, and that the action is against the State in its sovereign capacity and therefore prohibited by section 26 of article IV of the constitution. The constitutional provision is "The state of Illinois shall never be made defendant in any court of law or equity."

In support of the defense that this action is barred by a former order of this court, it is shown that at the January term, 1944, plaintiff made application to this court for leave to file an original action, identical with the present case, and that leave to file was denied. The suit, had permission to file been granted, was directed against the parties who are defendants in the present case, with a prayer for the same relief. Defendants contend that the order denying leave to file was an adjudication that plaintiff's complaint did not state a case for the equitable relief prayed, and that the doctrine of *res judicata* should be applied.

In support of their contention defendants cite *People ex rel. Bowen* v. *Hughes,* 370 Ill. 255. That was a *mandamus* action instituted on the relation of the Director of

the Department of Public Welfare against the Secretary of State to require him, as the State's purchasing agent of automobile license plates, to obtain the same from the supplies made by convict labor. It involved the construction of a statute. The cause came here on appeal from the circuit court. Prior to the starting of the suit in the circuit court, relator had made application to this court for leave to file the cause as an original action. Leave to file was denied. In the opinion there is a statement to the effect that the questions presented on the appeal on the merits of the case were the same as those involved in relator's application for leave to file an original action. It does not appear that former adjudication of the cause was pleaded or that it was an issue when here on appeal. In fact, the opinion shows that it was not disposed of by application of the doctrine of *res judicata* but that the statute upon which relator based his action was construed and that the conclusion drawn was founded on the language of the statute. The case is not a precedent for application of the rule of former adjudication in this case.

What does an order of this court denying an application for leave to file an original action really adjudicate? In the first place, the procedure in making the application and the order of denial does not include the fundamentals of parties and a decision on the merits, which are necessary that a judgment possess before it may be pleaded in bar of a subsequent action. The making of the application and its consideration by this court are *ex parte*. The persons who are to be defendants, if leave to file is granted, are not in court on such application and have no opportunity to resist it. It is clear that if an application for leave to file should be allowed, there would be nothing in the order allowing it that would operate as a bar to the defenses any defendant might interpose. In other words, the order allowing it to be filed is not an adjudication on the merits of the cause of action stated in the complaint

or petition. On the other hand, an order denying leave to file is not an adjudication on the merits of the cause of action stated in the pleadings, nor can an order of denial operate to estop the plaintiff or petitioner from prosecuting an action for the same relief in another court.

We will not undertake to specify all the grounds on which a leave to file may be denied or to indicate the one or ones that controlled the denial of plaintiff's application. The constitution limits the causes which may be started in this court as original actions to three classes, namely, those relating to revenue, *mandamus* and *habeas corpus*. (Const. art. VI, sec. 2.) It is obvious that the diversity of principles which control such classes of cases would necessarily lead to a number of reasons of controlling influences in the allowance or rejection of applications. The scope of the inquiry and the subject adjudicated in the denial of an application may be well illustrated by citing two of many examples. It has long been the rule that this court will not assume jurisdiction of an original action if the complaint or petition proposed to be filed presents an issue of fact. Clearly the rejection of an application for that reason is in no sense a determination of the cause on its merits. Another illustration is where the cause of action pleaded and the relief prayed pertain to matters of local or private interest as distinguished from those which are of public concern and affect the people generally. A denial of leave to file for this reason is not a determination that the cause of action stated in the complaint or petition did not have merit. Others might be added but what has been said will suffice to show that the order entered by this court denying leave to start this suit as an original action was not an adjudication on the merits nor did it estop plaintiff from starting another action in the circuit court and perfecting an appeal to this court.

We will not pause to discuss whether the constitutional provision, which directs the General Assembly shall

provide such revenue as may be needful, is a limitation which prohibits the accumulation of large surpluses of State tax, but will pass to the jurisdictional question that this is an action against the State. The constitutional provision which prohibits the State from being a party in suits at law or equity is in aid of the State's sovereignty. In *In re City of Mt. Vernon*, 147 Ill. 359, we quoted from *Haus* v. *Louisiana*, 134 U. S. 1, with approval as follows: "It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission." And further, "The obligations of a State rest for their performance upon its honor and good faith, and cannot be made the subjects of judicial cognizance, unless the State consents to be sued or comes itself into court."

The State is not named as a party to this action but that is not necessary to make it an action against the State, for a suit against a department of the State government serving as an agency of the State comes within the constitutional prohibition. In *Noorman* v. *Department of Public Works*, 366 Ill. 216, the State was not named, but it was held the action was in effect an action against the State. See cases cited therein. So same effect are *Posinski* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 376 Ill. 346, and *Schwing* v. *Miles*, 367 Ill. 436.

The statute which created the Department of Revenue is much the same as the statute which created the Department of Public Works and there is no material difference in the relationship which the two departments bear to the State's governmental affairs. The action against the Department of Revenue is an action against the State.

Plaintiff contends the action against Philip W. Collins, Director of the Department, is not an action against the State. The distinction between an action against a department of the State government acting as an agency of the State on matters authorized by the State, and an action

against an officer or director of a department where it is claimed he acted without authority was noted in *Schwing* v. *Miles,* 367 Ill. 436. It was said: "It is established that a suit against the department is a suit against the State * * * and will not lie. On the other hand, where the action at law or suit in equity is maintained against a State officer or the director of a department on the ground that, while claiming to act for the State, he violates or invades the personal and property rights of the plaintiff under an unconstitutional act, or under an assumption of authority which he does not have, such suit is not against the State. * * * The presumption obtains that the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by proper action instituted by a citizen."

The case of *Joos* v. *Illinois National Guard,* 257 Ill. 138, is relied upon by plaintiff. There the right to sustain the action against the officers of the National Guard was on the ground that in the invasion of plaintiff's rights, the officers had exceeded their authority. The complaint in this case is not predicated on a theory that the act under which the Director collects the tax is unconstitutional or that Collins, as Director, has exceeded the power vested in him. Plaintiff's contention rests on the principle previously stated that the constitution prohibits the accumulation of large surpluses. Collins, as Director, has nothing to do with shaping the policy that the occupational tax shall be computed on 2 per cent of the sale prices of sales made at retail. That was the policy adopted by the legislative branch of the government, and was an exercise of an act of sovereignty. The revenue collected under the act is applied to the payment of the expenses of State government, a matter in which the State is directly interested. Any action against Collins as Director, enjoining him from

collecting parts of the tax is an interference with matters of State sovereignty.

Other points are briefed, but since the suit cannot be maintained against Philip W. Collins, Director of the Department of Revenue or the Department of Revenue, there is no need for discussing them.

The decree of the circuit court dismissing the cause was correct and is affirmed.

*Decree affirmed.*