THE PEOPLE *ex rel.* PAUL O. CRUMP, Petitioner-Appellant, *v.* ELZA BRANTLEY, Warden, Illinois State Penitentiary at Menard, Respondent-Appellee.

(No. 57813;

First District (1st Division)—January 21, 1974.

James J. Doherty, Public Defender, of Chicago (Richard Kling and Robert Gray, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Jerald A. Kessler, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The petitioner appeals to this court from the dismissal of his petition for a writ of habeas corpus. By that petition he sought to overturn a ruling by the Attorney General of the State of Illinois that he was barred from consideration for parole because of the terms under which his death sentence had been commuted by the Governor of this State. He also sought immediate release as a means of relief from alleged mistreatment by the administrators of the State correctional system. The petitioner was originally convicted of murder, and sentenced to death. The conviction and sentence were reversed by the Illinois Supreme Court, (*People v. Crump* (1955), 5 Ill.2d 251, 125 N.E.2d 615.) A second conviction and the same sentence were imposed on the petitioner upon retrial, and this was affirmed by the Illinois Supreme Court, (*People v. Crump* (1957), 12 Ill.2d 402, 147 N.E.2d 76.) While awaiting execution, the death sentence was commuted by the Governor on August 1, 1963, to 199 years, without parole. In spite of the wording of the commutation order, the petitioner was considered for parole in 1965 and again in 1969. Another hearing was scheduled by the Parole Board for 1972, but was canceled after the Attorney General issued his said advisory ruling. Thereafter the instant petition was filed, heard and denied.

This appeal raises two issues: (1) whether the refusal further to consider parole is the proper subject matter for a petition for a writ of habeas corpus, and (2) whether the transfer of the petitioner to the Psychiatric Division of the Illinois State Penitentiary and other alleged mistreatment by prison officials can properly be raised in a habeas corpus petition.

■■■ With respect to the first issue, it has long been established in this State that habeas corpus is properly employed only where it can be shown that the original proceeding or judgment of conviction is void, or where something has happened since the rendition of the judgment to entitle the prisoner to his outright release. (See *People ex rel. Totten v. Frye* (1968), 39 Ill.2d 549, 237 N.E.2d 709; and *People ex rel. Skinner v. Randolph* (1966), 35 Ill.2d 589, 221 N.E.2d 279.) A writ of mandamus is considered the appropriate remedy to compel the Parole Board to grant a prisoner a hearing to determine his eligibility for parole. *People ex rel. Abner v. Kinney* (1964), 30 Ill.2d 201, 195 N.E.2d 651.) This problem was carefully considered by our Supreme Court in the case of *People ex rel. Castle v. Spivey* (1957), 10 Ill.2d 586, 141 N.E.2d 321, where the court, at 594-595, said:

"Parole is a matter of grace and not of legal right. A convict cannot invoke it at his own will and has no right to demand that he be discharged before the expiration of the maximum term of his sentence. (*People v. Nowak*, 387 Ill. 11; *People v. Thompson*, 381 Ill. 71; *People v. Connors*, 291 Ill. 614.) The Parole Act (Ill. Rev. Stat., 1955, chap. 38, par. 801 *et seq.*) does not by its provisions violate any right of a citizen guaranteed by the Federal or State constitutions. (*People v. Rohde*, 403 Ill. 41; *People v. Roche*, 389 Ill. 361; *People v. Mikula*, 357 Ill. 481; *People v. Connors*, 291 Ill. 614.) Neither prisoner had the legal right to release prior to the expiration of his full term of life imprisonment. The court could not legally discharge them prior thereto upon the mere showing that they had not been admitted to parole, or because the court might feel that denial of parole was unreasonable, or that the period of years served was sufficient to satisfy the ends of justice. A court has no jurisdiction in a *habeas corpus* proceeding to enter an order for a prisoner's release because of equitable considerations and no right to exercise clemency through its own processes. (*People ex rel. Barrett v. Crowe*, 387 Ill. 53.) The exercise of clemency is an executive, not a judicial function."

■■ We therefore hold that the Board's refusal again to consider the petitioner's parole is not a proper subject for a petition for a writ of habeas corpus.

With respect to the second point raised by this appeal, a petition for a writ of habeas corpus is likewise not a proper vehicle by which this court or the court below can determine whether or not the petitioner is being mistreated by the prison system administration. Since the implementation of the new Illinois State Penitentiary Act (Ill. Rev. Stat. 1969, ch. 108), and the implementation of new administrative regulations by the Department of Corrections, our Supreme Court has considered whether or not a protest of transfer to the Psychiatric Division is the proper subject matter for a writ of habeas corpus and has held that it is not. In *People ex rel. Willis v. Department of Corrections* (1972), 51 Ill.2d 382, 282 N.E.2d 716, the court, at pages 383-384, 385, 387-388, said that:

"He [the petitioner] contends that his confinement at Menard is tantamount to being detained 'in a mental institution' and constitutes cruel and unusual punishment in violation of the eighth amendment to the Federal constitution and a deprivation of liberty without due process. He also contends that he was afforded inadequate assistance of counsel with regard to the *habeas corpus* proceeding. The State's contentions are that the transfer of an

inmate to the psychiatric division of the Illinois State Penitentiary is an administrative determination and may be done without a full hearing, and that *habeas corpus* is not an appropriate proceeding for the review of such an action.

The Illinois State Penitentiary Act modernized and streamlined the penitentiary system and consolidated all institutions for the incarceration of convicts under the administration of the Department of Corrections, subject to certain exceptions which are not pertinent here. The institution previously known as the Illinois Asylum for Insane Criminals became known as the psychiatric division. (Ill. Rev. Stat. 1969, ch. 108; par. 106.) Diagnostic Depots were established under section 5 of the Act. (Ill. Rev. Stat. 1969, ch. 108, par. 109.) At such depots, the prisoner is examined to determine the appropriate division of the penitentiary system to which he should be confined, including the psychiatric division. The prisoner is to be held at the assigned division 'until discharged according to law, or until assigned by the Department to some other division of the system.'

Section 6 of the Act (Ill. Rev. Stat. 1969, ch. 108, par. 110), subject to the other provisions of the Act, gives to the Department of Corrections 'full power to transfer prisoners from one division to another as often as the nature of the individual case or the exigencies of administration may require.'

＊  ＊  ＊

The State points out that the Department of Corrections is charged with the care of the prisoners and the determination of whether any prisoner is suffering from 'mental, intellectual, emotional, character, or personality disorder,' such that he should be confined within the psychiatric division, is an administrative decision that must be made by the Department without cumbersome time-and-expense-consuming procedures. There is obvious common sense support for this conclusion. There also is legal precedent. See: *Pigg v. Patterson* (10th cir. 1966), 370 F.2d 101, and *United States ex rel. Gapinski v. Ragen* (7th cir. 1945), 152 F.2d 268.

The Illinois statutes suggest varying procedures in connection with the transfer of an inmate within the penitentiary system. Section 7 of the Illinois State Penitentiary Act provides that an inmate may be transferred within the penitentiary system to a psychiatric division without a hearing. Section 8.01 *et seq.* of the Act (Ill. Rev. Stat. 1969, ch. 108, par. 112.01 *et seq.*) permit the transfer of an inmate from the penitentiary system to the custody

of the Department of Mental Health. If the prisoner does not object, he may be so transferred, without a hearing, for a period of not more than six months. If he objects, or if the treatment will require transfer of more than six months, a full hearing in the circuit court is required in conformity with the provisions of the Mental Health Code of 1967.

\* \* \*

Likewise, since this case was taken under advisement, the Department of Corrections of the State of Illinois has adopted new Administrative Regulations. Section 801 thereof outlines the Reception and Diagnostic Center Functions and provides for the assignment of inmates to a regular Adult Division institution, facility, or program within 30 days after his or her admission by the Administrator of the Office of Program Services. Section 819 provides for Institutional Transfers, permits any inmate to request an institutional transfer, and empowers the institutional staff to recommend such transfer at any time. The section, however, makes no provision for a review of the decision of the Administrator of the Office of Program Services upon a denial of the request.

\* \* \*

In view of the new Administrative Regulations which have been adopted by the Department, we believe that the appropriate procedure is to withhold judicial action pending an opportunity for petitioner to make a request for transfer pursuant to section 819 thereof, and for the expeditious consideration of that request by Department officials. The comprehensive administrative program which has been undertaken by the Department must have a reasonable opportunity to evolve procedures which will meet the needs of the prison system and the requirements of due process of law. Some provision for adequate internal review of the denial of a request for transfer must be made available."

■■ See also *In re. Petition of Owen* (1973), 54 Ill.2d 104, 110, 295 N.E.2d 455, where this position is reaffirmed. The decision reached by our Supreme Court in these two cases controls our decision here. We therefore conclude that habeas corpus is not a proper remedy and that, even if it were, the petitioner must first employ and exhaust the administrative remedies which have been afforded him. His second contention is therefore without merit.

It should be noted that nothing in this opinion precludes the petitioner from filing a petition for a writ of mandamus against the Parole Board to compel it again to consider whether he should be paroled. When

the correct form of petition has been filed and the necessary defendants are before the court, a trial court can then decide that question.

The petition was properly dismissed.

Judgment affirmed.

BURKE and GOLDBERG, JJ., concur.