THE PEOPLE *ex rel.* RONALD BURBANK, Petitioner-Appellant, *v.* JAMES R. IRVING, Chairman, Illinois Prisoner Review Board, *et al.*, Respondents-Appellees.

Third District No. 81—397

Opinion filed August 24, 1982.

Ronald Burbank, for appellant, *pro se.*

Tyrone C. Fahner, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

In 1970 the petitioner, Ronald Burbank, was found guilty of murder and was sentenced to an indeterminate term of 100 to 150 years' imprisonment · following a jury trial in the circuit court of Cook County. He was convicted of participating in an aborted armed robbery in which his partner had shot and killed the victim. The petitioner has since served his minimum sentence, with allowance for statutory good time credits, in the Department of Corrections Stateville Correctional Center in Joliet and has applied for parole before

the Prisoner Review Board four times, all of which have been denied.

Because the petitioner received his indeterminate sentence, which exceeded 20 years, prior to the effective date of the 1977 act amending the Unified Code of Corrections, the Prisoner Review Board was not authorized to set a fixed parole date. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—2.1(b).) Therefore the petitioner had to first fulfill the requirements of section 3—3—3(a) to become eligible for parole. (Ill. Rev. Stat. 1979, ch. 1003—3—3(a).) Upon becoming eligible in June 1978, he applied for parole, but the Board denied his request, basing its decision on "the very serious nature of your committing charge, murder, and your extremely lengthy sentence of 100 to 150 years." One year later the Board rejected his second request for parole, finding that parole would deprecate the serious nature of his offense. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—5(c)(2).) The Board added, however, that the petitioner would be a "more positive candidate" for parole were he to complete successfully a work release program and recommended that the Department of Corrections transfer him to that program. The petitioner's application for work release through a community correctional center was approved by the Institutional Classification Committee, but the Department of Corrections, which operates the program, rejected the application and the Prisoner Review Board's recommendation, reasoning that further observation in a minimum security setting was necessary before it would consider transferring the petitioner to a community correctional center. He then exhausted his administrative remedies without success. In February 1980 the Board rejected the petitioner's third application for parole, citing the same reason as the previous rejection, to prevent the deprecation of the seriousness of the offense. Later in 1980 the petitioner reapplied for work release, but his application was denied by the transfer coordinator for the Department of Corrections. The reasons given for the denial were the petitioner's lengthy sentence, the seriousness of the offense, protests from the State's Attorney and others, and the three prior denials by the Prisoner Review Board. In February 1981, the Board rejected the petitioner's fourth application for parole, this time saying his release would deprecate the seriousness of the offenses "for which you were convicted, murder [and] armed robbery ***." In June 1981 the petitioner filed the instant *pro se* petition for *habeas corpus* in the circuit court of Will County seeking his discharge from the custody of the Department of Corrections. His petition contained essentially the following four allegations: that the system of prisoner release violated the petitioner's rights to due process; that the Board acted arbitrarily and capriciously when it denied pa-

role based on the seriousness of the offense because such a reference was "boiler plate" language that was vague and insufficient; that the Board abused its discretion in denying his fourth request for parole because it based its decision in part on an offense which the petitioner was neither charged with nor convicted of; and that the Department of Corrections abused its discretion in refusing to accept the Board's recommendation that the petitioner participate in a work release program. He alleged that had the Board acted properly and placed him on parole, his sentence would have been terminated by the time the instant *habeas corpus* action was filed. The circuit court dismissed his petition finding that he had failed to state a cause of action. He appeals from that dismissal, and we affirm.

At common law the writ of *habeas corpus* was a highly prerogative form of relief designed for the purpose of effecting the speedy release of persons who are illegally deprived of their liberty. The proceeding is not a corrective one, and, where other proceedings are available and effective, *habeas corpus* relief will not be favored. (39 Am. Jur. 2d *Habeas Corpus* sec. 18 (1968).) The primary and, ordinarily, the only question involved in *habeas corpus* proceedings is one of jurisdiction—namely whether the particular order, judgment, or process whose validity is attacked comes within the lawful authority of the court making or issuing it. If a court determines that the petitioner has been illegally deprived of his liberty, it will order the only remedy authorized, his immediate release from custody.

The specific authority of Illinois courts to grant discharges in *habeas corpus* proceedings has been carefully prescribed in sections 21 and 22 of the Habeas Corpus Act. (Ill. Rev. Stat. 1979, ch. 65, pars. 21, 22.) Section 21(2) provides that a court shall not discharge a person who is held in custody by virtue of any circuit court, unless the time during which such party may be legally detained has expired. Section 22(2) authorizes discharge where, though original imprisonment was lawful, yet by some act, omission, or event which has subsequently taken place, the party has become entitled to his discharge. Our supreme court has repeatedly held that a court has jurisdiction in a *habeas corpus* proceeding only when the original judgment of conviction was void, or where something has happened since its rendition to entitle the prisoner to immediate release. Moreover, where the legality of the original imprisonment is not challenged, the inquiry is ordinarily limited to determining whether the maximum term for which the defendant was sentenced has expired or has been lawfully terminated. *People ex rel. Castle v. Spivey* (1957), 10 Ill. 2d 586, 141 N.E.2d 321.

▆▆▆ In applying these strictly obeyed jurisdictional precepts of the Habeas Corpus Act to the instant case, we must affirm the dismissal of the petition because our law is well settled that the decision to grant parole to a prisoner who has not yet served his maximum sentence is not a subsequent act, omission, or event entitling him to discharge. For the same reason, we find that the Department of Corrections' refusal to place the petitioner in a work release program did not entitle him to *habeas corpus* discharge. Accordingly, his petition failed to state a cause of action. Although the petitioner has vigorously and cogently presented his contentions before the circuit court and this court, he has labored under the misapprehension that *habeas corpus* relief which is available in the Federal courts (28 U.S.C. sec. 2241 *et seq.* (1976)) is identical to Illinois *habeas corpus* proceedings and has relied on numerous Federal cases in this State setting. In a Federal *habeas corpus* proceeding, the district court in *United States ex rel. O'Connor v. MacDonald* (N.D. Ill. 1978), 449 F. Supp. 291, noted the relatively narrow scope of the Illinois Act in comparison to the Federal *habeas corpus* law in holding that an Illinois prisoner, who claimed that the Prisoner Review Board's denial of parole was unconstitutional, had not failed to exhaust his State judicial remedies when he failed to seek discharge first under our Habeas Corpus Act:

"The question whether in a particular case an Illinois prisoner has an available post-conviction remedy is an old and troublesome one. [Citations.] For a case like the one at bar, sections 1003—3—1 *et seq.* of the Uniform Code of Corrections which govern Parole Board rulings, do not provide for judicial review. Moreover, it is fair to say that Illinois courts display an unwillingness to make state remedies available to prisoners. [Citation.] Whether common law certiorari, a well known Illinois procedure, see *Goodfriend v. Board of Appeals of Cook County,* 18 Ill. App. 3d 412, 305 N.E.2d 404 (1973), is available to a prisoner like petitioner, is a subject that has not attracted the attention of legal scholars, practicing lawyers, or Illinois judges." *United States ex rel. O'Connor v. MacDonald* (N.D. Ill. 1978), 449 F. Supp. 291, 295 n.2.

Aside from the rather disparaging tenor of *MacDonald,* we concur with its conclusion that the Illinois Habeas Corpus Act does not provide relief to a prisoner whose request for parole has been unreasonably, arbitrarily, or capriciously denied. Even those decisions of the Board that are tantamount to the alleged constitutional violations of which the petitioner claims here are not subject to *habeas corpus* relief in the Illinois courts. This is true because parole is not a termina-

tion of the prisoner's sentence and does not entitle him to immediate discharge, which is the sole relief available under our Act. In Illinois, the mere existence of a system for paroling prisoners does not transform parole into a legal right. (*People ex rel. Castle v. Spivey* (1957), 10 Ill. 2d 586, 141 N.E.2d 321; accord, *Greenholtz v. Inmates* (1979), 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100.) Admission to a parole status does not terminate a prisoner's sentence, therefore entitling him to discharge, for parole is simply an alternative method by which he may complete his sentence. (*People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 265 N.E.2d 144.) The decision to modify the prisoner's status from incarceration to parole lies within the largely unreviewable discretion of the Prisoner Review Board. Parole, as well as work release, is granted to prepare a prisoner for his ultimate release and discharge of his sentence. Once placed on parole, however, a prisoner remains in the "custody" of the Department of Corrections and must complete the term unless the Board orders early release and discharge under section 3—3—8. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—8; *Collins v. Sielaff* (1976), 43 Ill. App. 3d 1022, 357 N.E.2d 1213.) For a court to order a *habeas corpus* discharge before the petitioner's sentence is completed on the basis of an erroneous or inequitable denial of parole, would exceed its authority under the Habeas Corpus Act and constitute an exercise of clemency, a function vested in the executive, not judicial, branch. *People ex rel. Castle v. Spivey* (1957), 10 Ill. 2d 586, 141 N.E.2d 321.

Moreover, we cannot accept the petitioner's contention that at the time he filed his petition he was entitled to immediate discharge because, had the Board properly granted his first application for parole in 1978, he would have completed his statutorily prescribed three year term of parole. (Ill. Rev. Stat. 1979, ch. 38, pars. 1003—3—8, 1005—8—1(d)(1).) To accept this argument, we would have to presume that a petitioner would not have violated the terms of his probation for that period, a presumption which we decline to indulge.

Accordingly, we affirm the order of the circuit court of Will County dismissing the petition for writ of *habeas corpus*.

Affirmed.

SCOTT, P. J. and ALLOY, J., concur.