Paul O. CRUMP, Petitioner-Appellant,

v.

Michael P. LANE, Director, Illinois
Department of Corrections, et al.,
Respondents-Appellees.

No. 86–1286.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1986.

Decided Dec. 19, 1986.

Elmer Gertz, Chicago, Ill., Donald S.
Rothschild, Oak Park, Ill., for petitioner-appellant.

Jill Wine Banks, Office of Illinois Atty.
Gen., Chicago, Ill., for respondents-appellees.

Before BAUER, Chief Judge,
CUMMINGS and EASTERBROOK,
Circuit Judges.

CUMMINGS, Circuit Judge.

This action challenges a series of decisions by the Illinois Prisoner Review Board ("the Board") denying plaintiff's release on parole on eight separate occasions between February 1977 and April 1984. Plaintiff seeks both money damages and declaratory relief under 42 U.S.C. § 1983 and a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On March 19, 1953, plaintiff Paul Crump was convicted of killing an unarmed security guard during a robbery. Crump was sentenced to death for the murder. In 1955 the Illinois Supreme Court reversed Crump's conviction and remanded the case for a new trial. Crump was retried and again convicted of murder and sentenced to death. On August 1, 1962, his sentence of death was commuted to a term of "199 years, without parole." In 1976 the "without parole" provision was stricken from the previous commutation order. Between February 1977 and April 1984, Crump has been considered for parole by the Board

eight times, and the Board has denied parole each time.

Plaintiff filed the present action in federal district court on November 17, 1982. Plaintiff twice amended his complaint to add challenges based on the 1983 and 1984 denials of parole. After a full evidentiary hearing, the district court denied Crump's petition for a writ of habeas corpus and entered judgment in favor of the defendants on all other claims. It is from these judgments that plaintiff appeals.

I.

■ The defendants assert that this Court is precluded from reviewing the merits of plaintiff's claims because he has failed to exhaust his available state court remedies as required by 28 U.S.C. § 2254(b). They contend that plaintiff must seek a writ of mandamus in an Illinois circuit court before the exhaustion requirement may be deemed satisfied.

This is not the first time that the exhaustion requirement has been at issue in this case. On December 18, 1984, the district court dismissed the habeas portion of plaintiff's complaint for failure to exhaust his state remedies for denial of parole because he had failed to seek a writ of mandamus in the Illinois courts in accordance with this Court's decision in *United States* ex rel. *Johnson v. McGinnis,* 734 F.2d 1193 (7th Cir.1984). Plaintiff then proceeded to file a motion for leave to file a petition for an original writ of mandamus with the Illinois Supreme Court, which was denied on June 25, 1985. Finding that plaintiff had exhausted all state remedies, the district court reinstated plaintiff's action on July 30, 1985.

Relying on our decision in *Granberry v. Mizell,* 780 F.2d 14 (7th Cir.1985), certiorari granted *sub nom. Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 62, 93 L.Ed.2d 21, defendants argue that plaintiff must seek a writ of mandamus in an appropriate Illinois circuit court. In essence, their position is that the Illinois Supreme Court's denial of the motion for leave to file a petition for a writ of mandamus was not a decision on

the merits and thus plaintiff must now seek a writ in circuit court.

Plaintiff attempts to distinguish his case from the factual situation before this Court in *Granberry.* In *Granberry,* the Illinois Supreme Court denied the petitioner's motion seeking leave to file a petition for a writ of mandamus "without prejudice to proceeding in any appropriate circuit court for consideration of the question presented." 780 F.2d at 16. In contrast, plaintiff argues, the language used by the Illinois Supreme Court in his case was merely "Motion *denied."* (Plaintiff's Reply Br.App. 1). Plaintiff draws a negative inference from the language used by the Illinois Supreme Court in the *Granberry* case to demonstrate that the motion for leave to file in his case was denied with prejudice.

The exhaustion issue here obviously turns on what *res judicata* effect the Illinois courts give to a denial by the Illinois Supreme Court of a motion for leave to file a petition for a writ of mandamus. Plaintiff has provided us with no Illinois caselaw to support his proposition that the denial was a ruling on the merits and accordingly with prejudice. The Illinois Attorney General has cited the case of *People* ex rel. *Yarrow v. Lueders,* 287 Ill. 107, 122 N.E. 374 (1919), as authority for the proposition that the denial was not a ruling on the merits and thus without prejudice. Our reading of the *Lueders* case, however, does not yield the proposition that the Attorney General claims. In *Lueders,* the Illinois Supreme Court held that the exercise of its original jurisdiction in mandamus is discretionary and that it would assume jurisdiction in a mandamus case "where there is a special reason and the remedy in the trial court is ineffective" even though an identical proceeding was pending in a lower court. 287 Ill. at 112, 122 N.E. at 376. *Lueders* did not address the question of whether the Illinois Supreme Court's denial of a motion for leave to file a petition for a writ of mandamus would preclude the petitioner from refiling the petition in circuit court.

Our own research has revealed several Illinois cases which hold that the Illinois Supreme Court's denial of a motion for leave to file is without prejudice to refiling in the circuit court. In *Monroe v. Collins,* 393 Ill. 553, 66 N.E.2d 670 (1946), the Illinois Supreme Court held that an order denying leave to file an original action in the Illinois Supreme Court is not an adjudication on the merits and does not preclude the plaintiff from prosecuting an action seeking the same relief in a circuit court and eventually perfecting an appeal to the Illinois Supreme Court. 393 Ill. at 556–557, 66 N.E.2d at 672. The court based its holding on the nature of the motion for leave to file an original action:

> [T]he procedure in making the application and the order of denial does not include the fundamentals of parties and a decision on the merits, which are necessary that a judgment possess before it may be pleaded in bar of a subsequent action. The making of the application and its consideration by this court are *ex parte.* The persons who are to be defendants, if leave to file is granted, are not in court on such application and have no opportunity to resist it. It is clear that if an application for leave to file should be allowed, there would be nothing in the order allowing it that would operate as a bar to the defenses any defendant might interpose.

393 Ill. at 556, 66 N.E.2d at 672.

In reviewing a mandamus case the Appellate Court of Illinois has recently relied on *Monroe v. Collins* to hold that the denial of a motion for leave to file a complaint for mandamus directly with the Illinois Supreme Court does not operate as a bar to a subsequent proceeding in an Illinois circuit court based on the same complaint. *Torjesen v. Smith,* 114 Ill.App.3d 147, 150, 69 Ill.Dec. 813, 815, 448 N.E.2d 273, 275 (5th Dist.1983), appeal dismissed, 465 U.S. 1015, 104 S.Ct. 1262, 79 L.Ed.2d 670. Therefore when the Illinois Supreme Court denied Crump's motion for leave to file a petition for a writ of mandamus, it was without prejudice to his refiling the petition in circuit court. Moreover, as *Monroe* and *Tor-jesen* illustrate, if the circuit court were to deny Crump's petition for mandamus, he would then be free to seek review in the Illinois appellate courts.

Crump maintains that he did file a petition for a writ of mandamus in an Illinois circuit court in 1974. *People* ex rel. *Crump v. Brantley,* 17 Ill.App.3d 318, 307 N.E.2d 651 (1st Dist.1974), certiorari denied, 419 U.S. 1111, 95 S.Ct. 787, 42 L.Ed.2d 808. However, because only the most recent parole denial in 1984 is the proper subject of Crump's habeas corpus petition, since it is pursuant to this latest determination that Crump remains in custody, *United States* ex rel. *King v. McGinnis,* 558 F.Supp. 1343, 1345 n. 1 (N.D.Ill. 1983), it is obviously impossible for Crump to have raised his claims surrounding the 1984 denial in a petition for mandamus filed in 1974.

■ Crump makes a more serious argument when he complains that the Illinois Attorney General waived the exhaustion issue in the district court. Indeed, when the district court reinstated Crump's second amended complaint on July 30, 1985, the Attorney General apparently conceded that Crump had fully exhausted his state remedies. In his memorandum opinion below, Judge Plunkett acknowledged this fact when he wrote, "Both sides agree that Crump has exhausted all state court remedies, a prerequisite to this court's consideration of a petition for a writ of habeas corpus." *Crump v. Lane,* No. 82 C 7043, slip op. at 2 (N.D.Ill. Oct. 29, 1985) [Available on WESTLAW, DCTU database].

The Attorney General now argues that the defendants did not waive the exhaustion issue but merely erred in failing to press it before the district court. Before our decision in *Granberry,* he contends, there was insufficient support in the law for the defendants to have insisted that the district court should dismiss plaintiff's habeas petition for failure to exhaust and instruct him to file a petition for a writ of mandamus in the proper Illinois circuit court.

The waiver question presented here is similar to that before this Court in *United States* ex rel. *Lockett v. Illinois Parole & Pardon Bd.,* 600 F.2d 116 (7th Cir.1979). In *Lockett,* the state had failed to raise the exhaustion issue in the district court and in the briefs on appeal. Between the time that the *Lockett* briefs were filed and the oral argument on appeal, this Court handed down a decision which suggested that the petitioner had not exhausted all available state court remedies.[1] Consequently, the state urged the exhaustion issue at the *Lockett* argument for the first time. Acknowledging that the Circuits were divided as to whether the state could waive the exhaustion requirement, we concluded that the exhaustion issue had not been waived by the state in *Lockett* because the state had made no explicit waiver and had orally raised exhaustion before us on appeal. 600 F.2d at 118. Moreover, we concluded that there was no bar to raising the exhaustion issue on our own. *Id.* See *Mattes v. Gagnon,* 700 F.2d 1096, 1098 n. 1 (7th Cir.1983) (court must consider whether petitioner succeeded in exhausting his state remedies as required by § 2254(b), "although the parties do not raise the question").

To be sure, this Circuit has not spoken with one voice on whether the exhaustion requirement may be waived by the state. In *Heirens v. Mizell,* 729 F.2d 449, 457 (7th Cir.1984), certiorari denied, 469 U.S. 842, 105 S.Ct. 147, 83 L.Ed.2d 85, the Court in dicta suggested that the exhaustion issue may be waived if the state fails to raise the issue in the proceeding before the district court. The cases cited as authority in

*Heirens,* however, did not involve the exhaustion requirement, but merely expressed the general rule that a party on appeal may not raise arguments that were not first presented to the district court. More importantly, in *Granberry,* we expressly rejected *Heirens* to the extent that it could be read "as suggesting that the exhaustion requirement may be waived by the failure to assert it in the district court." 780 F.2d at 15. The Illinois Attorney General in *Granberry* asserted the exhaustion requirement for the first time on appeal, but we nonetheless concluded that the state had not waived exhaustion and remanded the case to the district court with instructions to dismiss for failure to exhaust state remedies.

Although it was seemingly suggested in dicta in *Granberry* that even an explicit waiver by the state of the exhaustion requirement would be ineffectual, 780 F.2d 15–16, this Circuit has never adopted such a far-reaching rule.[2] In *United States* ex rel. *Russo v. Attorney General of Illinois,* 780 F.2d 712, 714 n. 1 (7th Cir.1986), certiorari denied, —— U.S. ——, 106 S.Ct. 2922, 91 L.Ed.2d 550, we declined to order *sua sponte* dismissal for failure to exhaust because the state had failed to raise the exhaustion issue both in the district court and on appeal. Similarly, in *Mosley v. Moran,* 798 F.2d 182, 184 (7th Cir.1986), we held that this Court need not always reach the exhaustion issue *sua sponte* when the state has failed to press it on appeal and special circumstances counsel against dismissing the action for failure to exhaust. In *Mos-*

1. *United States* ex rel. *Williams v. Morris,* 594 F.2d 614 (7th Cir.1979).

2. Two recent Seventh Circuit cases have suggested, while expressly declining to hold, that the state may not waive the defense of exhaustion of state remedies. *Barrera v. Young,* 794 F.2d 1264, 1267–1268, 1269 n. * (7th Cir.1986); *Walberg v. Israel,* 766 F.2d 1071, 1072 (7th Cir.1985), certiorari denied, —— U.S. ——, 106 S.Ct. 546, 88 L.Ed.2d 475. These cases note that the statutory basis of the exhaustion doctrine, § 2254(b), is phrased in mandatory terms. If the satisfaction of § 2254(b) is construed to be a precondition to a federal court's exercising jurisdiction over a habeas corpus action, even an explicit waiver by

the state of the exhaustion requirement would not authorize the federal court to reach the merits of the petitioner's claim. In *Walberg,* the Court also noted that considerations of comity and federalism should make a federal court determine on its own initiative whether the petitioner has exhausted his state remedies because the state attorney general may not be representing the interests of the state as a collective. *Sua sponte* consideration of the exhaustion requirement by the court of appeals may be necessary if the attorney general is "less zealous in protecting the prerogatives of the state than he ought to be." 766 F.2d at 1072.

*ley,* the state had argued exhaustion in the district court but chose not to raise it on appeal. While deciding not to reach the exhaustion issue, we emphasized that "a federal court should reach nonexhausted habeas claims only 'in those rare instances where justice so requires.'" 798 F.2d at 184 (quoting *United States* ex rel. *Trantino v. Hatrack,* 563 F.2d 86, 95 (3d Cir. 1977), certiorari denied, 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524). These cases obviously differ from the one now before us in that the Illinois Attorney General is urgently pressing the exhaustion issue here on appeal.

As indicated above, the Supreme Court on October 6, 1986, granted certiorari in *Granberry.* 107 S.Ct. 62. One of the questions to be presented to the Supreme Court is "Does state's failure to raise issue of non-exhaustion of state court remedies in district court foreclose consideration of that issue on appeal in federal habeas corpus petition brought by state prisoner under 28 U.S.C. § 2254?" —— U.S. ——, 107 S.Ct. 312, 93 L.Ed.2d 286 (1986). The Court's answer should resolve the uncertainty within our Circuit over the waiver problem, not to mention the division within the Circuits, see *Granberry,* 780 F.2d at 15 (discussing cases from different Circuits). Until the Supreme Court renders its decision, the controlling law in this Circuit is that the state will not be deemed to have waived the exhaustion requirement as long as it presses the issue on appeal.

Moreover, there is an important distinction between this case and *Granberry.* Although the opinion there is silent, it appears that the state's failure to raise the exhaustion issue in the district court in *Granberry* was the result of mere carelessness by the Attorney General. See also *Barrera v. Young,* 794 F.2d 1264, 1267 (7th Cir.1986) (posing the question as "whether exhaustion of remedies may be waived by oversight"). In this case, like the *Lockett* situation, the state did not argue exhaus-

tion before the district court because until we issued our opinion in *Granberry,* the Attorney General did not believe that he had sufficient support to advance the proposition that a habeas petitioner challenging a parole denial must seek a writ of mandamus in a circuit court in order to satisfy the exhaustion requirement of § 2254(b), even though the Illinois Supreme Court may have previously denied a motion for leave to file an original petition for a writ of mandamus. That the Attorney General was generally concerned with the exhaustion requirement is evidenced by the fact that he was successful in convincing the district court to dismiss Crump's habeas petition in 1984 for failure to exhaust on the ground that he had failed to seek a writ of mandamus in any Illinois court. We therefore conclude that the defendants here have not waived the defense of failure to exhaust state remedies.

As the Attorney General argues, dismissal for failure to exhaust state remedies is particularly appropriate here because the Illinois courts have apparently not yet had an opportunity to interpret the particular provision of the Illinois parole statute under which Crump's due process claims arise. Ill.Rev.Stat. ch. 38, ¶ 1003–3–5(c)(1).[3] This fact takes on special importance in light of the larger question of whether the parole statute creates the sort of "liberty or property" interest entitled to constitutional protection. In *Scott v. Illinois Parole & Pardon Bd.,* 669 F.2d 1185 (7th Cir.1982) (*per curiam*), certiorari denied, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 this Court held that the Illinois parole statute does create a legitimate expectation of release on parole and thus gives rise to a constitutionally protected liberty interest. The Court noted, however, that the Illinois courts had never interpreted the scope of the interest, if any, which the statute was intended to afford Illinois state prisoners, 669 F.2d at 1189 and n. 4, and the decision was based on a prediction about the course

---

**3.** Subsection (c)(1) provides:

The Board shall not parole a person eligible for parole if it determines that:

(1) there is a substantial risk that he will not conform to reasonable conditions of parole;

. . . .

of decision in the Illinois state courts. The Illinois courts have yet to construe the Illinois parole statute in light of our decision in *Scott*.[4] Moreover, in *Huggins v. Isenbarger*, 798 F.2d 203 (7th Cir.1986), this Court held that the Indiana parole statute, similar in most respects to the Illinois statute, did not create a constitutionally protected interest, again on the basis of a prediction about what the Indiana state courts will do. This confusion has led the Supreme Court to grant certiorari in *Allen v. Board of Pardons*, 792 F.2d 1404 (9th Cir.1986), certiorari granted, —— U.S. ——, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986), which followed the approach taken in *Scott*, to determine whether the Montana parole statute creates a constitutionally protected "liberty interest entitlement in parole release." The uncertainty surrounding the construction of state parole statutes makes it all the more important to allow the Illinois courts an opportunity to state their view of the meaning of the Illinois parole statute.

We appreciate that the district court has already held a full evidentiary hearing on the merits of Crump's claims. Unfortunately, this fact in itself does not allow us to circumvent the exhaustion requirement of § 2254(b). It should, however, substantially obviate the need for further fact-finding if Crump chooses to reinstate his action in the district court upon exhausting all available state court remedies.

For the reasons set out above, we remand plaintiff's action to the district court with instructions to dismiss for failure to exhaust state remedies.

## II.

■ Ordinarily our holding that plaintiff failed to exhaust his state remedies would end our consideration of the case on appeal. In addition to his habeas corpus petition, however, Crump has also brought a § 1983 action seeking damages and a declaratory judgment that he is being illegally confined in violation of the United States Constitution. Unlike federal habeas claims, § 1983 actions are not subject to the requirement that the plaintiff must first exhaust all available state court remedies. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, the Supreme Court explored the interrelationship between 28 U.S.C. § 2254 and 42 U.S.C. § 1983 in actions brought by prisoners. The Court recognized that in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, it had previously held that a writ of habeas corpus is the sole federal remedy for state prisoners challenging the very fact or duration of their confinement and seeking a speedier release. The Court in *Preiser*, however, had also held that "habeas corpus is not an appropriate or available federal remedy" for damages claims, 411 U.S. at 494, 93 S.Ct. at 1838, and that damages claims could be pressed under § 1983 along with suits challenging the conditions of confinement rather than the fact or length of custody. *Id.* at 498–499, 93 S.Ct. at 1840–1841.

The *Wolff* Court affirmed the holding in *Preiser* and further clarified the distinction between habeas relief and § 1983 actions. While emphasizing that prisoners seeking actual release must first exhaust their

---

4. In *People* ex rel. *Burbank v. Irving*, 108 Ill.App.3d 697, 64 Ill.Dec. 303, 439 N.E.2d 554 (3d Dist.1982), the Appellate Court of Illinois ruled that the Illinois Habeas Corpus Act does not provide relief to a prisoner whose request for parole has been unreasonably, arbitrarily or capriciously denied. In so doing, the court noted that in Illinois the mere existence of a parole system does not transform parole into a legal right and that the decision to modify a prisoner's status from incarceration to parole lies within the largely unreviewable discretion of the Prisoner Review Board. 108 Ill.App.3d at 702, 64 Ill.Dec. at 306, 439 N.E.2d at 557. Al-

though this decision would tend to suggest that our prediction in *Scott* may not have been correct, we do not find it conclusive because the court was construing the Habeas Corpus Act, not the parole statute. See *Heirens v. Mizell*, 729 F.2d 449, 465–466 n. 18 (7th Cir.1984) (refusing to reconsider *Scott* in light of *Burbank* because it did not directly address whether the Illinois parole statute creates an expectation of parole requiring protection under due process). Furthermore, because it was released shortly after our decision in *Scott*, the decision did not take note of *Scott*.

available state court remedies, the Court indicated that claims properly brought under § 1983 may go forward in federal court at the same time. 418 U.S. at 554, 94 S.Ct. at 2973. Claims properly brought under § 1983 include those seeking damages, a declaratory judgment as a predicate to a damages award, or an injunction against future misconduct. *Id.* at 554–555, 94 S.Ct. at 2973–2974.[5]

In *Hanson v. Heckel*, 791 F.2d 93 (7th Cir.1986) (*per curiam*), this Court recently held that a prisoner may not maintain a § 1983 action until he has exhausted all available state remedies if a decision on the civil rights claim would be tantamount to a decision on his entitlement to an immediate or more speedy release. Plaintiff Hanson's § 1983 action alleged that he was arbitrarily denied meritorious good-time credits against his sentence in violation of his constitutional rights under the due process and equal protection clauses. Hanson requested that the district court enter a declaratory judgment and award damages for the alleged deprivation of good-time credits, but he did not request the award or restoration of any credits. Hanson, however, had pending in the Illinois state courts a habeas corpus action raising the identical claims advanced in the § 1983 action. This Court concluded that Hanson raised issues which were properly the basis for a habeas corpus action and therefore held that he could not proceed without first exhausting his state court remedies.

On its face, this broad holding would appear to conflict with the Supreme Court's decision in *Wolff*. That case involved a § 1983 class action brought by state prisoners challenging on due process grounds the disciplinary procedures used to award good-time credits against their sentences. Following *Preiser*, the Court held that the prisoners were required to seek restoration of good-time credit, which would of course affect their release date, in a habeas corpus proceeding after first exhausting state remedies. It also held, however, that short of ordering the actual restoration of good time already cancelled, the district court could review the allegedly unconstitutional procedures in a § 1983 action and could grant damages, or a declaratory judgment as a predicate to an award of damages, and injunctive relief with regard to future proceedings involving good-time rights. 418 U.S. at 554–555, 94 S.Ct. at 2973–2974.

Other circuits which have adopted approaches consistent with our result in *Hanson* have attempted to distinguish *Wolff* from those cases in which the § 1983 action raises no issue other than the fact or length of a particular prisoner's confinement. In *Alexander v. Ware*, 714 F.2d 416, 418–419 (5th Cir.1983), the Fifth Circuit held that where a prisoner challenges a single, isolated constitutional violation resulting in his illegal confinement, he is in essence attacking the fact and duration of his custody and must first resort to habeas and exhaust state remedies. If, however, the prisoner mounts a broad, systematic due process challenge to a prison disciplinary system, or a procedure or policy employed therein, he is in essence challenging the conditions of his confinement, even though the challenged practice may also affect the fact or length of his own confinement, and may pursue a remedy under § 1983.

---

5. The sole federal remedy for a prisoner who seeks release because of a constitutional defect in his conviction is habeas corpus, even if he seeks damages stemming from his alleged unlawful conviction. See, *e.g.*, *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir.1985) (*per curiam*); *Richardson v. Fleming*, 651 F.2d 366, 373 (5th Cir.1981); *Parkhurst v. Wyoming*, 641 F.2d 775, 777 (10th Cir.1981) (*per curiam*); *Williams v. Ward*, 556 F.2d 1143, 1150 (2d Cir.1977). These decisions are motivated not as much by the considerations laid out by the Supreme Court in

*Preiser* as by the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, which bars federal court interference with on-going state criminal proceedings. In these cases, without a requirement that the prisoner first exhaust all available state court remedies, the federal court's resolution of the prisoner's claim for money damages would involve a determination of the validity of a state court conviction simultaneously under review in the state appellate courts.

The Fourth Circuit, in *Todd v. Baskerville*, 712 F.2d 70, 72–73 (4th Cir.1983), explained that a § 1983 action may be maintained without exhaustion of state remedies when the prisoner's claim (1) alleges a constitutional due process violation relating to prison procedures that do not affect the length or duration of his sentence as then existing, or (2) seeks damages because of mistreatment violative of constitutional rights and relating strictly to the conditions of his confinement and not its fact or duration. If, however, the core of the prisoner's claim is the length or duration of his sentence and "any claim of damages is purely ancillary to and dependent on a favorable resolution of the length or duration of sentence," the proceedings must first be in habeas and are subject to exhaustion. 712 F.2d at 73.

It would appear that under certain circumstances at least, a prisoner may pursue a § 1983 action in federal court without first exhausting his state court remedies even though, as in *Wolff*, the claims raised in the § 1983 action are virtually identical to those raised in a habeas corpus proceeding.[6] We need not precisely define those circumstances now because the facts of the instant case are virtually identical to those in *Hanson*.[7] Crump's § 1983 action does not challenge the constitutionality of the procedures or the statutory provisions and regulations used by the Illinois Prisoner

Review Board in making their decisions. Rather, Crump merely alleges that the Board's repeated decisions to deny him parole violated his constitutional rights to due process and equal protection because they were arbitrary and capricious and based on grounds which were unsupported by the evidence and impermissible under the terms of the Illinois parole statute.

Were we to entertain Crump's § 1983 action and find that the Board's decisions indeed violated his constitutional rights, it would be tantamount to deciding that Crump is being illegally confined in violation of the United States Constitution. In his dissent in *Preiser*, even Justice Brennan acknowledged that where a prisoner's selection of an alternative remedy to habeas corpus undermines and effectively nullifies the habeas exhaustion requirement, the suit should be viewed as "an impermissible attempt to circumvent that requirement." 411 U.S. at 524 n. 24, 93 S.Ct. at 1854 n. 24. The core of Crump's claim concerns the fact or duration of his confinement, and any award of damages would be entirely dependent upon the favorable resolution of that issue. Before Crump may properly maintain a § 1983 action for damages arising out of his allegedly illegal confinement, he must first exhaust his state court remedies as required by 28 U.S.C. § 2254(b).[8] The judgment of the

---

**6.** If the prisoner were successful in his § 1983 action, he would be entitled to damages and whatever injunctive relief would be appropriate within the limitations set out in *Wolff*. He would not, of course, be entitled to release. As the Supreme Court noted in *Wolff* at 418 U.S. 554 n. 12, 94 S.Ct. at 2974 n. 12, however, the adjudication of the federal § 1983 claim may through *res judicata* determine the outcome of the state proceedings in which the prisoner is seeking release.

**7.** The difficulty in differentiating between which prisoner petitions are properly brought as § 1983 actions and which are properly brought as habeas corpus actions is further illustrated by the fact that this Circuit allows prisoners to challenge parole denials in § 1983 actions as long as they do not assert a right to be released on parole, but seek only a statement of reasons for the denial or an injunction requiring a rehearing by the Board in accordance

with due process. See *Huggins v. Isenbarger*, 798 F.2d 203, 204 (7th Cir.1986); *Walker v. Prisoner Review Bd.*, 694 F.2d 499, 501 (7th Cir.1982). Although the relief sought in the § 1983 action might improve the prisoner's chance of parole, these cases maintain that the question of release would still remain within the discretion of the parole board. The holding of these cases has been criticized on the ground that although the complaint may not formally pray for release, the prisoner is actually seeking, sooner or later, just that. *Huggins*, 798 F.2d at 207 (Easterbrook, J., concurring).

**8.** As we pointed out in *Hanson*, 791 F.2d at 97 and n. 8, Crump's right to seek relief under § 1983 will not be prejudiced by the running of the relevant statute of limitations, Ill.Rev.Stat. ch. 110, ¶ 13–202. See *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (appropriate state statute of limitations that federal court must borrow in § 1983 suit is the statute

district court finding in favor of the defendants on the § 1983 claims is vacated.

of limitations for personal injury suits). Ill.Rev. Stat. ch. 110, ¶ 13–211 specifically tolls the statute for persons imprisoned on a criminal charge until 2 years after their release. See *Bailey v.* *Faulkner,* 765 F.2d 102, 104 (7th Cir.1985) (when federal court borrows a state statute of limitations, it borrows any applicable tolling provisions as well).